[Crim. No. 3833. In Bank.—February 27, 1935.]

THE PEOPLE, Respondent, v. CHARLES MILLER, Appellant.

Wayne P. Burke for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

SHENK, J.—The defendant was charged by information with assault with intent to murder one Albert Jeans. An amended information was filed charging the defendant with "attempt to commit murder, in that on or about the 17th day of March, 1934, ·in the county of Mendocino, State of California, he did, then and there, wilfully, unlawfully and feloniously, attempt to murder one Albert Jeans". The jury found the defendant guilty as charged in the amended information. The defendant has appealed from the judgment and from the order denying his motion for a new trial, assigning as grounds of appeal the insufficiency of the amended information to constitute a public offense, insufficiency of the evidence to sustain the verdict, and prejudicial error in the giving of certain instructions.

The defendant contends that the information should have included allegations of facts showing the overt or other acts constituting the attempt alleged. The defendant did not demur to the information. The claim is that the information does not comply with the requirements of sections 950, 951 and 952 of the Penal Code. Section 952 provides that the statement of the offense may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the defendant notice of the offense of which he is accused. We are satisfied that the matter contained in the statement of the charge was a sufficient compliance with the code requirements. (31 Cor. Jur. 742; 14 R. C. L. 185.) If there was any noncompliance with the sections in the respect claimed, the defect was waived by the failure to demur. (Secs. 1004, 1012, Pen. Code; *People* v. *Mead,* 145 Cal. 500,

503 [78 Pac. 1047]; *People* v. *Perfetti,* 88 Cal. App. 609, 615, 616 [264 Pac. 318].)

 The evidence is practically without conflict. On the day in question the defendant, somewhat under the influence of liquor, and in the presence of others at the postoffice in the town of Booneville, threatened to kill Albert Jeans for the reason avowed by the defendant that Jeans, a negro, had been annoying his wife and that the authorities would not take charge of the matter. Jeans had had some association with the defendant and other white people in that community for a number of years. On that day Jeans was employed on the hop ranch of Ginochio, who was the constable of Booneville. About 4 o'clock that afternoon, while Constable Ginochio, Jeans and others were planting hops, the defendant entered the hop field of Ginochio carrying a .22 caliber rifle. Ginochio was about 250 or 300 yards away and Jeans about 30 yards beyond him. The defendant walked in a direct line toward Ginochio. When the defendant had gone about 100 yards he stopped and appeared to be loading his rifle. At no time did he lift his rifle as though to take aim. Jeans, as soon as he perceived the defendant, fled on a line at about right angles to Miller's line of approach, but whether before or after the stooping motion made by the defendant is not clear. The defendant continued toward Ginochio who took the gun into his own possession, the defendant offering no resistance. The gun was found to be loaded with a .22 caliber long, or high-speed, cartridge. The foregoing are the salient facts stated without the color afforded by the epithets and language used by the defendant in making his threats.

The main question presented by the appeal is whether the acts of the defendant legally constituted the offense of attempt to commit murder, and it must be said that an examination of the authorities casts considerable doubt on the question whether under the penal laws of this state the act charged has been committed in the case before us. (Pen. Code, secs. 217, 664, subd. 1.)

The authorities agree that it is impossible to formulate a general rule or definition of what constitutes an attempt which may be applied as a test in all cases, and that each case must be determined on its own facts with the assistance of general guiding principles. (8 R. C. L., p. 277; *Stokes*

v. *State,* 92 Miss. 415 [46 So. 627, 21 L. R. A. (N. S.) 898] ; see *People* v. *Stites,* 75 Cal. 570, 575 [17 Pac. 693] ; *People* v. *Lanzit,* 70 Cal. App. 498, 504, 505 [233 Pac. 816].)

█ Where the crime remains unfinished and the defendant is charged with attempt, two important elements are essential: A specific intent to commit the crime (*People* v. *Mize,* 80 Cal. 41 [22 Pac. 80]), and a *direct* ineffectual act done towards its commission. (*People* v. *Murray,* 14 Cal. 159; *Ex parte Floyd,* 7 Cal. App. 588, 590 [95 Pac. 175] ; *People* v. *Petros,* 25 Cal. App. 236, 244 [143 Pac. 246]; 18 R. C. L., p. 277.) Mere intention to commit a specified crime does not amount to an attempt. (*People* v. *Stites, supra.*) Preparation alone is not sufficient. "Something more is required than mere menaces, preparation or planning." (30 Cor. Jur. 13.) "The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the *direct movement* towards the commission after the preparations are made. . . . Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." (8 R. C. L., pp. 278, 279.) "There must be some appreciable fragment of the crime committed, and it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter." (Wharton's Criminal Law, 12th ed., vol. 1, p. 280.) It is also stated in the same work at page 292 of volume 1: "If the preparation is not of itself indictable, or will not of itself, if uninterrupted extraneously, result in crime, the weight of reasoning is that it cannot be made *per se* indictable as an attempt. For, first, there is no evidence as a general rule, that can prove that a particular preparation was designed for a particular end. Thus a gun may be bought as well for hunting as for homicide. Nor can we lay down any intelligible line between preparations which betray more clearly and those which betray less clearly a felonious purpose. Secondly, between preparation and execution there is a gap which criminal jurisprudence cannot fill up so as to make one continuous offense. There may be a change of purpose, or the preparation may be a vague precautionary measure, to which the law cannot append a positive criminal intent, ready to ripen into guilty act."

In the discussion of the requirement of causal relationship between the attempt and the act attempted the author points out the distinction between conditions and causes. He says: ''To enable a gunshot wound to be inflicted, an almost innumerable series of conditions is necessary. It is necessary that the gun should be procured by the assailant. . . . It is necessary that the assailed should be in a position to be shot, and that the assailant should be in a position to take aim. All these are necessary conditions to the shooting without which the shooting could not take place. No one of them, however, is in the eye of the law the cause. A juridical cause is such an act, by a moral agent, as will apparently result, in the usual course of natural events, unless interrupted by circumstances independent of the actor, in the consequence under investigation.'' (Vol. 1, Wharton's Criminal Law, 12th ed., p. 287.)

We are mindful of the fact that language appearing in *Stokes* v. *State, supra,* that ''whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt'', has received approval. (*People* v. *Lanzit,* 70 Cal. App. 498, 507, 508 [233 Pac. 816]; 8 R. C. L., p. 279; 13 R. C. L., p. 798.) The statement, however, that slight acts in *furtherance of the design* will be sufficient is not in conflict with the usual statements of the tests applied to aid in drawing the line at the point where preparation leaves off and execution has commenced. It still presupposes some direct act or movement in execution of the design, as distinguished from mere preparation which leaves the intended assailant only in the condition to commence the first direct act toward consummation of his design. The reason for requiring evidence of a direct act, however slight, toward consummation of the intended crime, is, as pointed out by the author in Wharton's Criminal Law, that in the majority of cases up to that time the conduct of the defendant, consisting merely of acts of preparation, has never ceased to be equivocal; and this is necessarily so, irrespective of his declared intent. It is that quality of being equivocal that must be lacking before the act becomes one which may be said to be a commencement of the commission of the crime, or an overt act, or before any fragment of the crime itself has been committed, and this is so for the reason that so long as the

equivocal quality remains no one can say with certainty what the intent of the defendant is. As stated in *United States* v. *Ford,* 34 Fed. 26, 27, "the intention of the actor can alone be clearly ascertained by the movements which he had made to complete his design".

In the early case of *People* v. *Murray,* 14 Cal. 159, a conviction of attempt to contract an incestuous marriage was reversed. In discussing the distinction between preparation and attempt, it was said: "To illustrate: a party may purchase and load a gun, with the declared intention to shoot his neighbor; but until some movement is made to use the weapon upon the person of his intended victim, there is only preparation and not an attempt. For the preparation, he may be held to keep the peace; but he is not chargeable with any attempt to kill." In the case of *Stokes* v. *State,* *supra,* it was held that, the intent being clear, the taking of a loaded gun and going in search of the intended victim constituted an attempt. Justification for the decision in that case may be said to lie in the possibility of the jury's finding under the facts there involved that the preparation for the assault was without any equivocality, and the intent thus being proved, the preparation was sufficient to constitute the overt act. The same reasoning applies to the cases of *People* v. *Lanzit,* 70 Cal. App. 498 [233 Pac. 816], wherein the defendant had prepared a bomb for the purpose of killing his wife; and *People* v. *Stites,* 75 Cal. 570 [17 Pac. 693], wherein the defendant had prepared to place dynamite on railway tracks, and in both of which convictions were upheld. These cases illustrate the small class of cases where the acts of preparation themselves clearly indicate the certain unambiguous intent and suffice to constitute the attempt. In the present case up to the moment the gun was taken from the defendant no one could say with certainty whether the defendant had come into the field to carry out his threat to kill Jeans or merely to demand his arrest by the constable. Under the authorities, therefore, the acts of the defendant do not constitute an attempt to commit murder. ▆ Furthermore, in such a case an instruction to the jury that guilty intent may be presumed from an unlawful act is prejudicially erroneous. The court instructed the jury: "The law presumes a malicious and guilty intent from the deliberate commission of an unlawful act for the

purpose of injuring another." This instruction is not proper in a case involving the charge of attempt to commit murder where intent is an essential element to be alleged and proved as a fact, and may not rest upon a presumption. (*People* v. *Wilson*, 117 Cal. 688, 693 [49 Pac. 1054]; 13 Cal. Jur., pp. 753, 754, and cases cited; *Morgan* v. *State*, .33 Ala. 413.)· ▇ Likewise, because intent is an element which must be proved, an instruction is erroneous which tells the jury that "if the actual transaction has commenced which would have ended in the crime of murder, if not interrupted, there is an attempt to commit the crime". (*People* v. *Mize*, 80 Cal. 41 [22 Pac. 80].) The distinction in this respect is .stated in 2 Bishop's Criminal Law, section 741, and quoted in the last-cited case: "The wrongdoer must specifically contemplate taking life, and though his act is such as, were it successful, would be murder, if in truth he does not mean to kill, he does not become guilty of an attempt to commit murder." (*People* v. *Weston*, 32 Cal. App. 571, 578 [163 Pac. 691].) The instructions containing the erroneous matter were prejudicial to the defendant's rights in the present case.

The judgment and order are reversed.

Langdon, J., Preston, J., Curtis, J., Thompson, J., and Waste, C. J., concurred.