[No. F040612. Fifth Dist. Oct. 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY RALPH MONTES, Defendant and Appellant.

[No. F040618. Fifth Dist. Oct. 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
RUTIN PABLO HERRERA, Defendant and Appellant.

1544

## Counsel

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant Anthony Ralph Montes.

Larry L. Dixon, under appointment by the Court of Appeal, for Defendant and Appellant Rutin Pablo Herrera.

Bill Lockyer, Attorney General, Robert R. Anderson and Jo Graves, Assistant Attorneys General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ARDAIZ, P. J.**—A jury found appellant Herrera guilty of attempted voluntary manslaughter of Jacob Olivo (Pen. Code, § 664/192, subd. (a); a lesser included offense of the count 1 charge of attempted murder), and of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 2). Herrera was sentenced to a total state prison term of nine years and six months. The jury found Herrera's codefendant, appellant Montes, guilty of the attempted voluntary manslaughter of Simon Verdugo (Pen. Code, § 664/192, subd. (a); a lesser included offense of the count 3 charge of attempted murder), and of assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 5). The jury acquitted Montes on a charge of shooting at an inhabited dwelling (Pen. Code, § 246; count 4).[1] Montes was sentenced to a total state prison term of 17 years and 6 months.

On this appeal both Herrera and Montes contend that the trial court erred in instructing the jury that the crime of attempted voluntary manslaughter may be committed by a perpetrator who "either intended to kill the victim, or acted in conscious disregard for life." Herrera further contends that his concurrent four-year term on his count 2 conviction for assault with a deadly weapon should have been stayed pursuant to section 654. Montes contends that his concurrent four-year term on his count 5 conviction for assault with a firearm should have been stayed pursuant to section 654, and that the court erred in imposing a 10-year section 12022.53 firearm use enhancement, because the jury never found a firearm use allegation to be true. As we shall explain, we agree with Herrera and Montes that the court's instruction on attempted voluntary manslaughter was erroneous. Specifically, we hold that intent to kill is an element of the crime of attempted voluntary manslaughter.

---

[1] All further references are to the Penal Code unless otherwise stated.

We need not reach the other issues raised by appellants because the instructional error in this case was prejudicial and requires reversal of the respective judgments.

## FACTS

On October 15, 2001, 19-year-old Jacob Olivo was visiting at a home on Rodriguez Street in Shafter. This was the family home of his friend, Simon Verdugo. At about 11:00 p.m., Olivo and Verdugo had gone outside, and were standing and talking in front of the house.

Olivo saw three men walk up the street toward the house. As Verdugo stood near the front door, Olivo saw appellant Montes holding a gun. As appellants approached the house, Montes, who was 10 to 12 feet away, began shooting in the direction of Verdugo. Verdugo ran for the front door. Olivo ran in the other direction toward the garage and between the two cars parked in the driveway. The area was well lit with streetlights, a porch light on the house, and motion detector lights on the garage above the driveway. Montes fired at least three shots.

As Olivo ran between the cars, he tripped and fell to the ground. He was set upon by appellant Herrera, who stabbed Olivo three times with a knife. One knife wound was to the left inside elbow, another was to the left side of his chest, two inches from the center, midway down, and the third wound was to his right hip. After shooting in the direction of the retreating Verdugo, Montes joined Herrera, pointed the gun at Olivo's head, and fired. The gun misfired. Herrera then got off Olivo, and Herrera and Montes ran down the street. Before and during the attack, no words were spoken—the attack was swift and silent. Olivo ran to a neighbor's backyard, and then into the Verdugo house through the back door. The police came soon afterwards in response to a call from Verdugo's mother.

I

## THE CRIME OF ATTEMPTED VOLUNTARY
## MANSLAUGHTER REQUIRES AN INTENT TO KILL

The court's instruction to the jury on attempted voluntary manslaughter told the jurors that one of the elements of the crime was "[t]he perpetrator of the attempted killing either intended to kill the alleged victim, or acted in conscious disregard for life."[2] Both appellants argue that this crime cannot be

---

[2] The jury in this case was instructed:

"The crime of attempted manslaughter is the unlawful attempted killing of a human being

committed when the perpetrator acts only "in conscious disregard for life." They contend that the crime requires the perpetrator to act with an intent to kill. We agree.

■ In *People v. Lasko* (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666], the court explained that the crime of manslaughter, like the crime of murder, does not necessarily require an intent to kill. "When a killer *intentionally* but unlawfully kills in a sudden quarrel or heat of passion, the killer lacks malice and is guilty only of voluntary manslaughter. We hold here that this is also true of a killer who, acting with conscious disregard for life and knowing that the conduct endangers the life of another, *unintentionally* but unlawfully kills in a sudden quarrel or heat of passion." (*Id.* at p. 104.) The *Lasko* court explained the difference between the crime of murder and the crime of manslaughter as follows:

"Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187, subd. (a).) Malice may be either express or implied. It is express when the defendant manifests 'a deliberate intention unlawfully to take away the life of a fellow creature.' (§ 188.) It is implied 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' (*Ibid.*) We have noted in the past that this definition of implied malice 'has never proved of much assistance in defining the concept in concrete terms' (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1217 [264 Cal.Rptr. 841, 783 P.2d 200]), and that juries instead should be instructed that malice is implied 'when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with

without malice aforethought." (CALJIC No. 8.37.) The jury was also instructed: "A lesser crime to Counts 1 & 3 is the crime of attempted voluntary manslaughter, a violation of section 667/192, subdivision (a) of Penal Code.

"Every person who unlawfully attempts to kill another human being without malice aforethought but either with an intent to kill, or in conscious disregard for human life, is guilty of attempted voluntary manslaughter in violation of Penal Code section 192, subdivision (a).

"There is no malice aforethought if the attempted killing occurred upon a sudden quarrel or heat of passion or in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury.

" 'Conscious disregard for life,' as used in this instruction, 'means that the attempted killing results from the doing of an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life.'

"In order to prove this crime, each of the following elements must be proved:

"1. An attempt was made to kill a human being;

"2. The attempted killing was unlawful; and

"3. The perpetrator of the attempted killing either intended to kill the alleged victim, or acted in conscious disregard for life. (CALJIC No. 8.40.)" The jury was also instructed with the definition of an attempt. (CALJIC No. 6.00.)

conscious disregard for life' (*id.* at p. 1215). For convenience, we shall refer to this mental state as 'conscious disregard for life.'

"Manslaughter is 'the unlawful killing of a human being without malice.' (§ 192.) A defendant lacks malice and is guilty of voluntary manslaughter in 'limited, explicitly defined circumstances: either when the defendant acts in a "sudden quarrel or heat of passion" (§ 192, subd. (a)), or when the defendant kills in "unreasonable self-defense"—the unreasonable but good faith belief in having to act in self-defense (see *In re Christian S.* (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Flannel* [(1979)] 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]).' (*People v. Barton* (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531].) The form of voluntary manslaughter we address here is when a defendant kills during a sudden quarrel or in the heat of passion. (We consider the other form of voluntary manslaughter—when a defendant kills in unreasonable self-defense—in the companion case of *People v. Blakeley* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675].)

"In a recent decision, we discussed what facts will reduce an *intentional* killing from murder to manslaughter, when based on heat of passion: 'An intentional, unlawful homicide is "upon a sudden quarrel or heat of passion" (§ 192(a)), and is thus voluntary manslaughter (*ibid.*), if the killer's reason was actually obscured as the result of a strong passion aroused by a "provocation" sufficient to cause an " 'ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than judgment.' " ' (*People v. Breverman* (1998) 19 Cal.4th 142, 163 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) No specific type of provocation is required, and 'the passion aroused need not be anger or rage, but can be any " ' "[v]iolent, intense, high-wrought or enthusiastic emotion" ' " [citations] other than revenge [citation].' (*Ibid.*) Thus, a person who *intentionally* kills as a result of provocation, that is, 'upon a sudden quarrel or heat of passion,' lacks malice and is guilty not of murder but of the lesser offense of voluntary manslaughter.

"But what offense is committed when a person, acting with a conscious disregard for life, *unintentionally* kills a human being, but the killing occurs during a sudden quarrel or in the heat of passion? Is it murder, voluntary manslaughter, or involuntary manslaughter? The Attorney General insists it is murder. We disagree. The statutory provision defining voluntary manslaughter contains no requirement of intent to kill. Section 192 describes manslaughter as 'the unlawful killing of a human being without malice' and states that there are three types of manslaughter. Subdivision (a) of this section defines voluntary manslaughter as occurring 'upon a sudden quarrel or heat of passion.' Nothing is said about an intent to kill.

"Under the Attorney General's approach, one who shoots and kills another in the heat of passion and with the intent to kill is guilty only of voluntary manslaughter, yet one who shoots and kills another in the heat of passion and with conscious disregard for life but with the intent merely to injure, a less culpable mental state than intent to kill, is guilty of murder. This cannot be, and is not, the law. [¶] . . . [¶]

"Thus, a killer who acts in a sudden quarrel or heat of passion lacks malice and is therefore not guilty of murder, irrespective of the presence or absence of an intent to kill. Just as an unlawful killing *with* malice is murder regardless of whether there was an intent to kill, an unlawful killing without malice (because of a sudden quarrel or heat of passion) is voluntary manslaughter, regardless of whether there was an intent to kill. In short, the presence or absence of an intent to kill is not dispositive of whether the crime committed is murder or the lesser offense of voluntary manslaughter." (*People v. Lasko, supra,* 23 Cal.4th at pp. 107–110, fns. omitted.)

■ Notwithstanding the fact that murder may be committed without an intent to kill, it has long been held that the crime of attempted murder does require an intent to kill. " 'To constitute murder, the guilty person need not intend to take life; but to constitute an attempt to murder, he must so intend.' " (*People v. Mize* (1889) 80 Cal. 41, 43–44 [22 P. 80].) Numerous cases recognize this rule. " 'The word "attempt" means to try; it implies an effort to bring about a desired result. Hence, an attempt to commit any crime requires a specific intent to commit that particular offense . . . . While a person may be guilty of murder though there was no actual intent to kill, he cannot be guilty of an attempt to commit murder unless he has a specific intent to kill.' " (*People v. Martinez* (1980) 105 Cal.App.3d 938, at p. 942, fn. 3 [165 Cal.Rptr. 11], quoting from Perkins on Criminal Law (1969), chapter 6, section 3, page 573.) "[T]he crime of attempted murder requires a specific intent to kill . . . ." (*People v. Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908] (reversed on other grounds *sub nom. California v. Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446]).) "[I]t has long been conclusively established in this state, beyond the need for citation of authority, that a person to be guilty of the crime of attempt to commit murder must harbor the *specific* intent to kill at the time of the overt act by which the attempt is manifested." (*People v. Santascoy* (1984) 153 Cal.App.3d 909, 913 [200 Cal.Rptr. 709].) " 'The wrongdoer must specifically contemplate taking life, and though his act is such as, were it successful, would be murder, if in truth he does not mean to kill, he does not become guilty of an attempt to commit murder.' " (*People v. Miller* (1935) 2 Cal.2d 527, 533 [42 P.2d 308].) Just as the crime of murder requires the "killing of a human being" (§ 187), so does the crime of manslaughter. (§ 192.) ■ If the crime of attempted murder requires a specific intent to bring about a desired result (the killing of a human being), then it appears to us that the crime of attempted voluntary

manslaughter must also require a specific intent to bring about that same desired result (the killing of a human being).

Respondent relies on the California Supreme Court's statement in *People v. Toledo* (2001) 26 Cal.4th 221, 230 [109 Cal.Rptr.2d 315, 26 P.3d 1051], that "[w]hen a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime [citation], and performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' [citation], the defendant may be convicted of criminal attempt." Respondent argues that so long as the perpetrator acts with the specific intent to engage in conduct which shows a conscious disregard for life, the perpetrator has acted with the "intent to engage in the conduct . . . proscribed by" the crime of attempted voluntary manslaughter and has satisfied the *Toledo* description of the specific intent requirement for a criminal attempt. We do not find this argument persuasive for at least two reasons.

First, the language relied on by respondent is vague. Indeed, the very same argument respondent makes here could be made with respect to the crime of attempted murder. ██ One who shoots and kills without an intent to kill, but with conscious disregard for life and not in the heat of passion, can be guilty of murder. (*People v. Lasko, supra,* 23 Cal.4th at p. 107.) But one who acts with this very same mental state, and shoots but does not kill, cannot be guilty of attempted murder. This is because attempted murder requires an intent to kill. (*People v. Mize, supra,* 80 Cal. 41; *People v. Martinez, supra,* 105 Cal.App.3d 938; *People v. Ramos, supra,* 30 Cal.3d 553; *People v. Santascoy, supra,* 153 Cal.App.3d 909; *People v. Miller, supra,* 2 Cal.2d 527.) Under respondent's argument, however, the shooter would be guilty of attempted murder because the shooter acted with the required mental state for the crime of murder. But nothing in *People v. Toldeo* states or even suggests that *Toledo* intended to overrule *Mize* and the *Mize* line of cases holding that the crime of attempted murder requires an intent to kill. Whatever the words "and/or bring about the consequences proscribed by the attempted crime" may mean, they do not appear to us to mean that the actor may be guilty of attempt, when the crime he or she is attempting to commit requires the killing of a human being, and the actor acts without an intent to bring about the consequence of death. Even the post-*Toledo* case of *People v. Bland* (2002) 28 Cal.4th 313 [121 Cal.Rptr.2d 546, 48 P.3d 1107], has reaffirmed that the crime of attempted murder requires an intent to kill. "The mental state required for attempted murder has long differed from that required for murder itself. Murder does not require the intent to kill. Implied malice—a conscious disregard for life—suffices. [Citation.] But . . . implied malice cannot support a conviction of an *attempt* to commit murder." (*People v. Bland, supra,* 28 Cal.4th at p. 327.)

Second, the *Toledo* case does not appear to us to support respondent's position because the language relied on by respondent is not only vague, it is also dicta. *Toledo* involved the crime of attempting to violate a statute which stated in part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person . . . shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (§ 422.) The issue in *Toledo* was whether there was such a crime as an attempted violation of section 422 (what the court called "*attempted* criminal threat"). The court concluded that "under California law, there is a crime of attempted criminal threat." (*People v. Toledo, supra,* 26 Cal.4th at p. 235.) *Toledo* simply does not hold that the crime of attempted voluntary manslaughter (or attempted murder) may be committed without an intent to kill. "[I]t is axiomatic . . . that a decision does not stand for a proposition not considered by the court." (*People v. Harris* (1989) 47 Cal.3d 1047, 1071 [255 Cal.Rptr. 352, 767 P.2d 619] (disapproved on other grounds in *People v. Wheeler* (1992) 4 Cal.4th 284, 299, fn. 10 [14 Cal.Rptr.2d 418, 841 P.2d 938]); *People v. Myers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698].)

Respondent also calls our attention to the cases of *People v. Coleman* (1989) 48 Cal.3d 112 [255 Cal.Rptr. 813, 768 P.2d 32] and *People v. Young* (1981) 120 Cal.App.3d 683 [175 Cal.Rptr. 1]. We see nothing in these cases which supports respondent's argument that the crime of attempted voluntary manslaughter does not require an intent to kill. In *Coleman* the appellant was convicted of the crime of assault with intent to commit murder (former § 217). The jury was instructed that the mental state required for commission of this crime was "intent to commit murder." The appellant argued that this instruction did not sufficiently apprise the jury that the crime required an intent to kill. The California Supreme Court rejected this argument and stated "it is impossible to intend to commit murder without intending to kill." (*People v. Coleman, supra,* 48 Cal.3d at p. 139.) In the case presently before us, however, the jury was not instructed that attempted voluntary manslaughter required either an intent to kill or an intent to commit murder. The jury was instructed that an element of the crime was "[t]he perpetrator of the attempted killing either intended to kill the alleged victim, or acted in conscious disregard for life." As we have explained, however, acting in conscious disregard for life is not sufficient. In *Young* the court stated that to sustain a conviction for attempted second-degree murder, "there must exist a union of a specific intent to commit murder and a specific intent to do the act which, if carried to conclusion, would result in murder." (*People v. Young, supra,* 120 Cal.App.3d at p. 692.) Given that an intent to commit murder necessarily implies an intent to kill (*People v. Coleman, supra,* 48 Cal.3d 112), we see nothing in *Young* which would support the view that the crime of attempted murder does not require an intent to kill, and we see nothing in

*Young* which would support respondent's argument that the crime of attempted voluntary manslaughter does not require an intent to kill.

■ Under the circumstances of this case, we cannot conclude that the error in the instruction on attempted voluntary manslaughter was harmless. Both appellants were charged with attempted murder, but neither was convicted of that crime. Appellant Montes fired at least three shots in the direction of Verdugo from a distance of about 12 feet or less, but none of the bullets struck Verdugo. Appellant Herrera stabbed Olivo three times after Olivo had fallen to the ground. None of the wounds was sufficiently deep to be mortal. The deepest wound was about one inch deep. One knife wound was to Olivo's elbow, one was to his right hip, and one was to his chest. There is thus a reasonable probability that the jurors considered both appellants to have acted with conscious disregard for life, and with an intent to frighten or injure, but not with an intent to kill. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Respondent raises no argument that instructional error, if any, was harmless. Respondent's position is that the instruction on attempted voluntary manslaughter was correct. As we have explained, it was not. Our disposition of this issue makes it unnecessary to address the other issues raised by appellants.

### DISPOSITION

The judgment of conviction in case No. SC083300A (appellant Montes; F040612) is reversed as to count 3 only (attempted voluntary manslaughter), and the matter is remanded to the superior court for resentencing. The judgment of conviction in case No. SC083300B (appellant Herrera; F040618) is reversed as to count 1 only (attempted voluntary manslaughter), and the matter is remanded to the superior court for resentencing.

Buckley, J., and Wiseman, J., concurred.

A petition for a rehearing was denied November 25, 2003, and the opinion was modified to read as printed above.