Filed 3/20/13  P. v. Castro CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046176 |
| v. | (Super. Ct. No. 10CF0902) |
| JUAN ALBERTO CASTRO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

## INTRODUCTION

A jury convicted Juan Alberto Castro of one count (count 2) of attempted voluntary manslaughter (Pen. Code, §§ 192, subd. (a), 664, subd. (a)) (as a lesser included offense of the charged crime of attempted murder), one count (count 3) of shooting at an inhabited dwelling house (*id.*, § 246), and one count (count 4) of assault with a firearm (*id.*, § 245, subd. (a)(2)).  The jury found true the allegations under Penal Code section 12022.5, subdivision (a) that Castro personally used a firearm in committing the crimes alleged in counts 2 and 4.  The trial court sentenced Castro to a prison term of nine years, four months.

Castro argues (1) the evidence was insufficient to support the conviction for attempted voluntary manslaughter, (2) the trial court erroneously instructed the jury on the required intent for assault with a firearm, and (3) the evidence was insufficient to support the conviction for assault with a firearm.  We conclude to the contrary on each argument and therefore affirm.

## FACTS

We view the evidence in the light most favorable to the verdict and resolve all conflicts in its favor.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Barnes* (1986) 42 Cal.3d 284, 303.)

Rolando Cabrera and his wife, Maria Guadalupe Hernandez, lived in an apartment building in Santa Ana.  Cabrera was responsible for the building's maintenance.

About 3:00 a.m. on April 12, 2010, Cabrera was pumping water out of the building, which had flooded during a rainstorm.  He placed a pump in the flooded area and ran a hose from the pump to the second-floor laundry room, which had a window facing the street.  Cabrera ran the hose through the laundry room window so the water discharged onto the street.  As he was pumping water, Cabrera felt the hose being tugged.  He returned the hose to its original position, but the hose moved again.  Cabrera looked

2

out the laundry room window and saw a man, later identified as Castro, pulling on the hose. Cabrera told him to let go of the hose. When Castro continued to tug on the hose, Cabrera told him to let go of the hose or else he would go down and "kick his ass." Castro looked up at the laundry room window and said, "come on down, you queer."

Cabrera went downstairs and saw that Castro had walked across the street and was standing in the yard of his house. Cabrera walked into the middle of the street and argued with Castro. As Cabrera walked back to the apartment building, Castro chased after him. Cabrera turned just in time to avoid being struck by Castro. The two exchanged blows until Castro had fallen to the ground.

Cabrera walked back to the apartment building and told Hernandez to call the police. Castro got up off the ground and followed Cabrera. The two resumed fighting until Castro again fell to the ground. Cabrera noticed that Castro was "drunk or something worse. . . . He was kind of stupid." Castro indeed had been drinking very heavily and using cocaine that night. He got up and tried to follow Cabrera as he walked into the apartment building, but the apartment security guard used pepper spray on Castro before he could enter.

Castro went home. Although his eyes were tearing from the pepper spray, he did not stop in the bathroom to rinse out his eyes: He went directly to his bedroom and retrieved a loaded handgun from a safe.

After reentering the apartment building, Cabrera locked the door behind him and walked up the steps toward the laundry room. Hernandez, who was inside the laundry room, looked out the window and saw Castro holding a gun and walking toward the apartment building. Hernandez spoke by telephone with a police officer and said, "the guy, he's coming" and "[h]e has a gun, he has a gun, hurry, hurry please."

Just as Cabrera was about to step into the laundry room, Hernandez yelled, "hey, he is bringing a gun. He has got a gun." At that moment, Castro, who was standing outside the apartment building, heard two voices coming from the area of the

3

laundry room window. He lifted the gun and fired two shots. Cabrera ducked down at the door to the laundry room. Hernandez and the security guard, who also was inside the laundry room, lay down on the floor.

The gunshots left bullet holes in the exterior of the wall of the apartment building to the left of the laundry room window. A nine-millimeter, semiautomatic Luger handgun was found buried in the side yard of Castro's house. The gun belonged to Castro. Two shell casings and two bullet cores fired by Castro's gun were found on the street by his house.

## DISCUSSION

## I.

### The Evidence Was Sufficient to Support the Conviction for Attempted Voluntary Manslaughter.

Castro challenges the conviction for attempted voluntary manslaughter on the ground the evidence was insufficient to prove he acted with the specific intent to kill Cabrera. Castro argues, "[t]he discharge of two bullets in a random and uncontrolled manner failed to prove that appellant had the specific intent to kill Cabrera."

As applicable here, voluntary manslaughter is the unlawful killing of a human being "upon a sudden quarrel or heat of passion." (Pen. Code, § 192, subd. (a).) "Voluntary manslaughter is a lesser included offense of murder when the requisite mental element of malice is negated by a sudden quarrel or heat of passion, or by an unreasonable but good faith belief in the necessity of self-defense." (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708.)

An attempt to commit a crime requires a specific intent to commit the crime. (Pen. Code, § 21a.) At least one Court of Appeal has held that the crime of attempted voluntary manslaughter requires a specific intent to kill a human being. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549-1550.) The jury in this case was

4

instructed that an element of attempted voluntary manslaughter was "[t]he defendant intended to kill that person." (See CALCRIM No. 603.)

Intent to kill usually must be inferred from the defendant's actions and the circumstances of the crime. (*People v. Smith* (2005) 37 Cal.4th 733, 741.) From the evidence at trial of Castro's actions and the circumstances of the crime, the jury could draw the inference that Castro intended to kill Cabrera by firing twice toward the laundry room window. Castro's altercation with Cabrera and anger at being pepper sprayed provided a motive for Castro's actions, and evidence of motive "will usually be probative of proof of intent to kill." (*Id.* at p. 742.) After being pepper sprayed, Castro returned home and deliberately removed a loaded handgun from a safe. While in the laundry room, Hernandez told a police officer that Castro was walking toward the building with a gun. Castro earlier had tried to follow Cabrera into the apartment building and therefore knew he was inside. Castro fired the gun toward the laundry room window, through which he earlier had seen Cabrera. Castro testified he fired the gun after hearing a male voice and a female voice coming from the laundry room window.

Castro missed, which is why he was charged with attempt, but the inference could be drawn that he was a bad shot or that his aim had been impaired by intoxication. A shooter's poor marksmanship does not necessarily mean the shooter lacked intent to kill; to the contrary, the very act of firing a gun in a manner that would have been deadly if on target is sufficient to support an inference of intent to kill. (*People v. Smith*, *supra*, 37 Cal.4th at p. 741.)

Castro argues the evidence of intent to kill in this case comes up short when compared to such evidence found to be sufficient in other cases. In *People v. Smith*, *supra*, 37 Cal.4th at pages 742-743, 748, the defendant, while standing directly behind an automobile, fired a single bullet toward the intended victim, who was in the driver's seat. The bullet shattered the rear windshield, passed through the driver's headrest, and lodged in the driver's side door. (*Id.* at p. 743.) The bullet narrowly missed the intended victim

5

and her child, who was in the rear passenger seat. (*Id.* at pp. 742-743.) The California Supreme Court concluded the evidence was sufficient to support the inference the defendant intended to kill not only the intended victim, against whom he harbored animosity, but her child too. (*Id.* at pp. 742, 748.) Both the intended victim and the child were in the defendant's line of fire. The defendant had looked into the car moments before the shooting and knew the child was in the backseat directly behind the intended victim. (*Id.* at p. 748.) In addition, because the defendant viewed the intended victim as his former girlfriend, the jury could have concluded he harbored animosity toward the child, whose father was the intended victim's current boyfriend. (*Ibid.*)

In *People v. Felix* (2009) 172 Cal.App.4th 1618, 1625, the defendant twice threatened to kill the intended victim within a period of an hour, then armed himself with a firearm, drove to the intended victim's house, and parked outside what the defendant believed to be the master bedroom. From close range, the defendant fired two gunshots into a master bedroom window. (*Id.* at pp. 1625-1626.) After fleeing, the defendant called and asked if he had harmed anyone. (*Id.* at p. 1626.) The Court of Appeal concluded this evidence was sufficient to support a finding of specific intent to kill the intended victim. (*Ibid.*)

In *In re Sergio R.* (1991) 228 Cal.App.3d 588, 593, 601, the evidence showed the defendant fired a 12-gauge shotgun at close range into a crowd of people in retaliation against a rival gang. None of the rival gang members was injured but an innocent bystander was killed and another was seriously injured. (*Id.* at pp. 593-594.) The Court of Appeal concluded the evidence was sufficient to prove the element of intent to inflict great bodily injury that is required to support the enhancements imposed under Penal Code former sections 12022.55 and 12022.7. (*People v. Sergio R.*, *supra*, at pp. 601-602.)

Castro argues that, in contrast to these cases, he did not fire directly into an occupied automobile, a crowd of people, or the occupied master bedroom of a home.

6

Instead, he argues, he "fired two shots in an indiscriminate manner" toward an apartment building, and there was no evidence he knew Cabrera or Hernandez was in the laundry room. The evidence supported an inference, however, that Castro fired his handgun toward the window of the laundry room of the apartment building and that he missed because he was a bad shot or was intoxicated. Castro knew that Cabrera had walked back into the apartment building after their fight, and earlier had seen him inside the laundry room.

Castro argues he testified that he fired the gun into the air and he did not intend to shoot anyone. But Castro testified that as he stood holding the gun outside the apartment building, he heard a male voice and a female voice coming from the area of the laundry room window. When Castro heard the voices, he raised his gun and fired. Although he testified he fired only to scare the security guard, the jury was entitled to disbelieve that portion of his testimony. (*Blank v. Coffin* (1942) 20 Cal.2d 457, 461; *Daly v. Wallace* (1965) 234 Cal.App.2d 689, 693 ["'The trier of fact may believe and accept a portion of the testimony of a witness and disbelieve the remainder'"].)

Castro equates this case to *People v. Leon* (2010) 181 Cal.App.4th 452, 465, in which the Court of Appeal held the evidence was insufficient to prove the defendant intended to kill one out of the three passengers of a car. In *People v. Leon*, the defendant fired a single shot toward a car holding three occupants, Jose Blanco, Victor Hernandez, and Richard Rodriguez. (*Id.* at pp. 457-458.) The bullet struck the car's rear taillight, travelled through the light and the right backseat, and fatally wounded Blanco, who was seated in the right backseat. (*Ibid.*) The defendant was convicted of the first degree murder of Blanco and of the attempted murder of Hernandez, who had been in the front passenger seat, and Rodriguez, who had been in the driver's seat. (*Id.* at pp. 456-457.) The Court of Appeal concluded the evidence was sufficient to support the jury's finding the defendant had the specific intent to kill Blanco and Hernandez and affirmed the murder conviction and the conviction on one of the two counts of attempted

7

murder. (*Id.* at pp. 463-465.) But the Court of Appeal concluded the evidence was insufficient to support a finding the defendant had the specific intent to kill Rodriguez, and reversed the conviction on the other count of attempted murder. (*Id.* at p. 465.) The court explained: "[The defendant] fired a single shot from behind the Camry into the right side of the passenger compartment, endangering the passengers seated in the right backseat (Blanco) and the front passenger seat (Hernandez). Rodriguez, who was in the driver's seat on the left side of the Camry, was out of the line of fire. It was physically impossible for the single bullet to strike Rodriguez as well as Blanco and Hernandez." (*Ibid.*)

In this case, Castro fired two shots toward the laundry room window from where he had heard voices and earlier had seen Cabrera. Here, unlike *People v. Leon*, a reasonable inference could be drawn from the evidence that Castro believed Cabrera to be in the line of fire. This evidence is sufficient to support the jury's verdict Castro had the intent to kill.

## II.

### The Trial Court Correctly Instructed the Jury on Assault with a Firearm.

Count 4 alleged Castro committed an assault with a firearm on Hernandez in violation of Penal Code section 245. On that count, the trial court instructed the jury with CALCRIM No. 875 (assault with a deadly weapon or force likely to produce great bodily injury), modified to read as follows: "When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone."

Castro argues CALCRIM No. 875 misstates the element of intent required for assault with a deadly weapon. He argues assault with a deadly weapon is a specific intent crime and therefore requires that the defendant specifically intended to injure the victim.

8

In *People v. Williams* (2001) 26 Cal.4th 779, 790, the California Supreme Court held assault with a deadly weapon is a general intent crime, does not require specific intent to cause injury, and requires only "an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."

CALCRIM No. 875 is in accord with *People v. Williams*, *supra*, 26 Cal.4th 779. We are bound by decisions of the California Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) and therefore reject Castro's claim of instructional error. Castro concedes CALCRIM No. 875 is correct under *People v. Williams* and challenges the instruction to preserve his right to seek California Supreme Court review.

## III.

### The Evidence Was Sufficient to Support the Conviction for Assault with a Firearm.

Castro argues the evidence was insufficient to support the conviction for assault with a firearm because there was no evidence he knew Cabrera and Hernandez were in the laundry room when he fired the shots.

In *People v. Williams*, *supra*, 26 Cal.4th at page 788, the California Supreme Court rejected a specific intent requirement and adopted the following knowledge requirement for assault: "[A] defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." In other words, "the prosecution was required to prove the defendant had actual knowledge his act, by its nature, would probably and directly result in physical force being applied on another person." (*People v. Riva* (2003) 112 Cal.App.4th 981, 997.)

9

As we have explained, the evidence at trial supported an inference that when Castro fired the shots, he believed Cabrera was inside the laundry room. In addition, Castro testified that while holding the gun and standing in front of the apartment building, he heard a male voice and a female voice coming from the direction of the laundry room window. Castro testified, "I heard the voices I heard them like from the window or around there." After hearing the voices, he raised his gun and fired.

This evidence was sufficient to support a finding that Castro had actual knowledge of the fact people were in the laundry room. Such knowledge would lead a reasonable person to realize that firing a gun toward the laundry room window would "probably and directly result in the application of physical force against another." (*People v. Williams*, *supra*, 26 Cal.4th at p. 790.)

### DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

10