ROTHSCHILD, P. J., Concurring and Dissenting. —
I concur in parts II, III, and V of the majority’s discussion, I concur in part and respectfully dissent in part to part I, and I respectfully dissent from part IV.
I. Attempted Burglary
A jury convicted defendants of burglary of a house on Labrador Street and attempted burglary of houses on Gothic Avenue, Gerald Avenue, and Tupper *493 Street. The majority affirms all of the convictions. I, however, believe that the evidence is insufficient to support the jury’s verdicts that defendants are guilty of the three attempted burglaries. I would therefore reverse the convictions for attempted burglary on counts 9 (Gothic Avenue), 10 (Gerald Avenue), and 11 (Tupper Street).
Defendants drove from the southern part of Los Angeles to the San Fernando Valley. After reaching the Northridge area, they drove slowly in and out of residential streets for about an hour and a half, stopping for a minute or two outside several houses. Taliah Bashir was driving, Willie Nunnery was in the front passenger seat, and Travion Weddington was in a rear seat. When they stopped outside a residence on Gothic Avenue, they waited in the car for about five minutes. Bashir then walked to the front door and knocked while Weddington and Nunnery waited in the car. When no one answered, Bashir returned to the car. Defendants then drove to a house on Gerald Avenue. Bashir knocked on the door and, when no one answered, peeked over a side gate. She returned to the car where defendants waited for a couple of minutes. They then drove to a house on Citronia Street, where Bashir knocked on the door and returned to the car when no one answered.[1] They remained there for a couple of minutes, then drove to a house on Tupper Street, where Bashir again knocked on the door, peeked over a gate, and returned to the car. After waiting for about five minutes, defendants drove to a residence on Labrador Street.
Bashir knocked on the door to the Labrador Street house, looked over the fence, returned to the car, and waited with the others for about five minutes. Bashir remained in the car while Weddington exited the car and entered the backyard of the house. Within a couple of minutes, Nunnery joined Weddington in the backyard. They then entered the house through a back window. About 10 minutes later, the two left the house via the front door carrying property taken from the house.
The majority correctly states the general principles concerning the law of attempt, which distinguishes preparation to commit a crime from acts that go beyond mere preparation and constitute “ ‘ “ ‘some appreciable fragment of the crime.’ ” ’ [Citations.]” (Maj. opn., ante, at p. 478.) As our Supreme Court has explained, the required act “ ‘must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.’ ” (People v. Miller (1935) 2 Cal.2d 527, 530 [42 P.2d 308] (Miller).) The “consummation” of a burglary occurs when the perpetrator enters a building with the intent to commit larceny or any felony. (Pen. Code, *494 § 459; Magness v. Superior Court (2012) 54 Cal.4th 270, 273 [142 Cal.Rptr.3d 268, 278 P.3d 259].) “Commencement” in this context is the point at which the perpetrator’s actions are no longer equivocal and it appears that the crime “will be consummated unless interrupted by circumstances independent of the will of the attempter.” (People v. Buffum (1953) 40 Cal.2d 709, 718 [256 P.2d 317]; see also People v. Dillon (1983) 34 Cal.3d 441, 455 [194 Cal.Rptr. 390, 668 P.2d 697] [“when the acts are such that any rational person would believe a crime is about to be consummated absent an intervening force, the attempt is underway”]; People v. Murray (1859) 14 Cal. 159, 160 [the attempt “must be manifest by acts which would end in the consummation of the particular offense, but for the intervention of circumstances independent of the will of the party”].)
In Miller, supra, 2 Cal.2d 527, the Supreme Court emphasized that the line between preparation and attempt is crossed only when the perpetrator’s conduct “cease[s] to be equivocal.” (Id. at p. 531.) In that case, the defendant threatened in the presence of others to kill Albert Jeans because Jeans had allegedly “been annoying his wife” and “the authorities would not take charge of the matter.” (Id. at p. 529.) That afternoon, Jeans was working at a ranch owned by the town constable. The defendant went to the ranch and, holding a rifle, walked toward both the constable and Jeans. The constable was 250 or 300 yards away and Jeans was about 30 yards behind the constable. After walking about 100 yards toward them, the defendant loaded his rifle, but never lifted it to take aim. Jeans ran off at a right angle to the defendant’s line of approach. The defendant continued walking toward the constable, who took the defendant’s gun without resistance. (Ibid.)
The Miller court explained that one does not commit a “direct act, however slight, toward consummation of the intended crime” so long as the person’s conduct remains equivocal: “It is that quality of being equivocal that must be lacking before the act becomes one which may be said to be a commencement of the commission of the crime, or an overt act, or before any fragment of the crime itself has been committed . . . .” (Miller, supra, 2 Cal.2d at p. 531.) Applying this rule, the court reversed the defendant’s conviction for attempted murder, explaining that “up to the moment the gun was taken from the defendant no one could say with certainty whether the defendant had come into the field to carry out his threat to kill Jeans or merely to demand his arrest by the constable.” (Id. at p. 532.)
Here, defendants’ actions with respect to the houses were at least as equivocal as the defendant’s actions in Miller. Before deciding upon any house to burgle, defendants drove slowly through residential streets, stopping for a minute or two in front of several houses, looking for the right one; when they identified a potential target, Bashir got out of the car to scout the house *495 by knocking on the door and looking into the side yard; when she returned, defendants remained in the car outside each house for several minutes apparently considering whether to break into that house or to continue their search. They rejected each house, not because something interfered with the execution of a burglary, but because, after considering each of the houses, they themselves decided to look for another target. Thus, defendants’ scouting or casing did not constitute an unequivocal commitment to breaking into the houses: They might break into the house, but they might keep looking. In fact, defendants did not break into any of these houses and instead kept looldng until they found what they considered a suitable target. After Bashir cased that house, she sat in the driver’s seat as the getaway driver. Weddington and Nunnery exited the car, approached the house, and broke in through a window. Thus, their particular modus operandi shows that, at the earliest, defendants unequivocally selected their target when the two men exited the car and walked onto the property of the house they actually burgled.
I agree with the majority that our review requires that we consider the totality of the evidence presented, including the reasonable inferences drawn from the evidence, in the light most favorable to the judgment. I also agree with the principle cited by the majority that we “ ‘ “ ‘should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.’ ” ’ [Citation.]” (Maj. opn., ante, at p. 481.) Here, common sense and the totality of the evidence point to one reasonable interpretation: Although defendants intended to break into one or more residences in the San Fernando Valley, they never decided to break into the Gothic Avenue, Gerald Avenue, and Tupper Street houses, and, therefore, never moved beyond mere preparation as to those homes.
Further, the cases upon which the majority rely are distinguishable. In People v. Prince (2007) 40 Cal.4th 1179 [57 Cal.Rptr.3d 543, 156 P.3d 1015], the defendant, who had previously entered several women’s homes to attack his victims, had been stalking Patricia Van. Van’s neighbor saw the defendant looking into backyards in the area. The defendant knocked on Van’s door and, when Van answered, asked for a person who did not live there. (Id. at pp. 1202, 1257.) At that point, the observant neighbor approached the defendant from behind and “challenged him brusquely.” (Id. at p. 1202.) The defendant then left. The Supreme Court held that these facts were sufficient to constitute attempted burglary because the defendant’s acts “went beyond mere preparation but were frustrated by the vigilance of the victim’s neighbor.” (Id. at p. 1257, italics added.) Here, by contrast, no neighbor or other intervening force frustrated or interrupted defendants’ plans; they simply moved on to scout other houses.
*496 In People v. Superior Court (Decker) (2007) 41 Cal.4th 1 [58 Cal.Rptr.3d 421, 157 P.3d 1017] (Decker), the defendant entered into a contract with a man who agreed to kill the defendant’s sister. The defendant gave the man a down payment of $5,000, and “had effectively done all that he needed to do to ensure that” the sister would be killed. (Id. at p. 14.) The hired killer, however, was an undercover detective. “But for” that fact, the court explained, “it [was] likely that [the defendant’s] conduct would have resulted in the murder” of his sister. (Id. at p. 13.)
Here, by contrast with Prince and Decker, the evidence does not show that the defendants had done all they needed to do to ensure a burglary would be executed. Nor was it the absence of an outside force that prevented a burglary of the houses. Rather, it was the defendants’ own decision to keep looking for a target that prevented the burglaries.
In People v. Zaun (2016) 245 Cal.App.4th 1171 [200 Cal.Rptr.3d 71] (Zaun), four associates employed “[t]heir normal approach” to committing burglaries: One of them would knock on the door of a residence and, if no one answered, they would “force the door open and steal what they could.” (Id. at pp. 1172-1173].) When they tried this approach on two particular houses, a resident answered the door. The person who knocked asked if a certain person lived there, or engaged in some conversation, then left. A jury convicted the defendant of attempted burglary of both homes and the Court of Appeal affirmed. According to the Third District Court of Appeal, the jury could reasonably conclude that the “defendant and his associates had the specific intent to commit burglary in each case, and the appearance of the [residents] at their respective doors served to interrupt the intended crimes.” (Id. at p. 1174].) Here, unlike in Zaun, there is no evidence that defendants’ intent to burgle was frustrated by the presence of unwanted occupants. Nor is there evidence that they would have consummated the crimes but for the presence of occupants in the houses. Rather, knocking and looking around was only part of their preparation, as demonstrated by their decision not to burgle the houses and to keep looking for another target.[2]
The majority relies on the rule that “ ‘ “slight acts in furtherance of the design will constitute an attempt.” ’ [Citations.]” (Maj. opn., ante, at p. 478.) The “slight acts” rule, however, “still presupposes some direct act or movement in execution of the design, as distinguished from mere preparation.” *497 (Miller, supra, 2 Cal.2d at p. 531.) That is, the “slight” act must occur after equivocation has ceased and consummation of the crime has commenced. (Ibid.) Because defendants had engaged only in scouting or casing activities preparatory to a burglary, no act, slight or otherwise, had occurred beyond mere preparation until after they selected the Labrador residence for their crime. I would therefore reverse the convictions for attempted burglary on counts 9, 10, and 11.
II. Duty to Instruct on Lesser Included Offense of Misdemeanor Evading
Under Vehicle Code section 2800.1,[3] “[a]ny person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer’s motor vehicle, is guilty of a misdemeanor.” If the driver of the car also drives “in a willful or wanton disregard for the safety of persons or property,” the driver has violated section 2800.2, which can be punished as a felony.[4] (See People v. Springfield (1993) 13 Cal.App.4th 1674, 1679-1680 [17 Cal.Rptr.2d 278] [the “only distinction between the two crimes is that in committing the greater offense the defendant drives the pursued vehicle ‘in a willful or wanton disregard for the safety of persons or property.’ ”].)
The court instructed the jury as to the charge of violating section 2800.2 without also instructing the jury that it could find Weddington and Nunnery guilty of the lesser offense of violating section 2800.1. I believe this was prejudicial error.
As the majority states, a trial court has a duty to instruct the jury sua sponte “ ‘ “on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.” ’ ” (Maj. opn., ante, at pp. 488-489, quoting People v. Breverman (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (Breverman).) The lesser offense instruction must be given when substantial evidence could support a finding that the defendant is guilty of the lesser offense. (Breverman, at p. 162.)
It is undisputed that Bashir, the driver of the getaway car, drove the car with willful and wanton disregard for the safety of persons or property. Weddington and Nunnery, however, did not drive the car at all — they were passengers. As the majority states, they can nevertheless be liable for *498 violating section 2800.2 if Bashir’s reckless driving was a natural and probable consequence of either their aiding and abetting of the burglary or their conspiracy to commit the burglary.[5] (See People v. Croy (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392]; People v. Prettyman (1996) 14 Cal.4th 248, 261 [58 Cal.Rptr.2d 827, 926 P.2d 1013].) As the majority concludes, “ ‘ “the ultimate factual question [under the natural and probable consequences doctrine] is one of foreseeability.” . . .’ [Citations.]” (Maj. opn., ante, at p. 487.) Foreseeability in this context is based on an objective standard; that is, “ ‘ “ ‘whether a reasonable person in the defendant’s position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.’ ” ’ ” (People v. Smith (2014) 60 Cal.4th 603, 611 [180 Cal.Rptr.3d 100, 337 P.3d 1159].)
I agree with the majority that it was reasonably foreseeable to one in Weddington’s and Nunnery’s positions that Bashir, as the driver of the getaway car, would flee from and attempt to evade police officers following their burglary. I also agree that there was sufficient evidence from which the jurors could conclude that it was reasonably foreseeable that Bashir would do so with willful and wanton disregard for persons and property. I thus concur in the majority’s substantial evidence analysis and the result in part III of the majority opinion.
In determining whether to instruct on the lesser offense of misdemeanor evading, however, the issue is not whether substantial evidence supports the verdict on the greater offense, but whether substantial evidence also supports the lesser offense: That is, that it was reasonably foreseeable that Bashir would flee from and attempt to evade police officers, but not with wanton and willful disregard for persons and property. I believe substantial evidence for that conclusion is found in the record. The greater crime involves greater risk to the occupants of the getaway car (as well as to persons in their path), increased punishment, and little chance of success. Thus, reckless driving from the scene of the crime was not inevitable. Indeed, the facts are susceptible of either crime and the jury should have been permitted to determine which, if any, crime the passengers committed.
The majority points out that Weddington and Nunnery “took full advantage of Bashir’s reckless driving” as they threw items out of the car’s windows *499 and ultimately fled on foot after the car crashed.'(Maj. opn., ante, at p. 490.) The majority also states that Nunnery’s disregard for safety of person or property is evidenced by his battery on the apprehending officer. (Ibid.) These facts, however, shed no light on the question of whether, from an objective point of view, persons in defendants’ positions as participants in a burglary would reasonably foresee Bashir’s reckless driving.
Because the evidence was sufficient to support a conclusion that misdemeanor evading, and not felony evading, was a foreseeable consequence of defendants’ burglary, the court erred in failing to instruct the jury with the lesser offense. Further, because it is a close question whether a natural and probable consequence of the burglary was the greater or lesser crime, the error was prejudicial. (See Breverman, supra, 19 Cal.4th at p. 149.) I would therefore reverse Weddington’s and Nunnery’s convictions for felony evading.
The petitions of all appellants for review by the Supreme Court were denied July 27, 2016, S234182.

 The information included a count alleging that defendants attempted to burgle a house on Citronia Street, based on knocking on the front door of the house. The court dismissed the count pursuant to Penal Code section 1118.1 for reasons not apparent in the record.

 The evidence regarding the September 7, 2011, incident at Elizabeth Barba’s residence is a closer case. There, after Bashir knocked on the door and returned to the car, defendants drove to an alleyway behind the house. Weddington then got out of the car and appeared to be approaching the back of the house when he saw a police officer, and then changed directions and returned to the car. This situation fits more closely to the facts in People v. Vizcarra (1980) 110 Cal.App.3d 858 [168 Cal.Rptr. 257], and Zaun, supra, 245 Cal.App.4th 1171. Therefore, I would affirm the attempted burglary conviction on count 2.

 Unless otherwise indicated, all subsequent statutory references are to the Vehicle Code.

 A violation of section 2800.2 is a so-called wobbler because it can be punished as a misdemeanor or a felony. (People v. Statum (2002) 28 Cal.4th 682, 685 [122 Cal.Rptr.2d 572, 50 P.3d 355].)

 It is also possible that Weddington and Nunnery could be liable as direct aiders and abettors of Bashir’s reckless driving regardless of the natural and probable consequences doctrine. If, for example, they actively encouraged or directed Bashir to drive with willful and wanton disregard for the safety of persons or property, they would be liable for the greater crime even if it was not a natural and probable consequence of the burglary. There is, however, no evidence of such encouragement or direction.