Filed 5/19/22  P. v. Mena CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHARLIE MENA,<br><br>    Defendant and Appellant. | G059183<br><br>(Super. Ct. No. 16NF1053)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed in part and reversed in part as directed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Charlie Mena is an admitted gang member.  In April 2016, he was involved in a gang-related shooting at a public park in Anaheim.  Among other charges, he was convicted of three counts of attempted voluntary manslaughter, possessing a firearm in a school zone, and discharging a firearm in a school zone.  Various enhancements were also found to be true, including a gang enhancement.  There is only one contested issue on appeal.  Mena seeks reversal of two counts of attempted voluntary manslaughter, arguing there is insufficient evidence showing he intended to kill more than one person.  We disagree.  There is sufficient evidence showing Mena shot at a group of rival gang members with intent to kill.

Mena also makes a series of arguments that the Attorney General does not contest.  First, his conviction for possessing a firearm in a school zone must be reversed because it is necessarily included in his conviction for discharging a firearm in a school zone.  Second, the gang enhancement findings must be reversed due to revisions to Penal Code section 186.22, which became effective at the start of this year.[1]  Third, his case must be remanded for resentencing due to other amendments to the Penal Code, which materially affect a judge's sentencing discretion, that also became effective this year.  We agree with all these contentions.  As such, the judgment is affirmed in part and reversed in part, and we direct the trial court on remand to resentence Mena under current law.

I

FACTS AND PROCEDURAL HISTORY

Mena, a member of the Barrio Small Town street gang (BST), was involved in an April 2016 shooting at Boysen Park in Anaheim, which is adjacent to Roosevelt Elementary School.  Witnesses saw Mena shooting a firearm in the direction of a group

---

[1]  All further undesignated statutory references are to the Penal Code.

of men, who were later identified to be rival gang members. In July 2018, the prosecution filed an information charging Mena with eleven counts.

- Three counts of attempted murder (§§ 664, 187, subd. (a); counts 1-3).
- Three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 4-6).
- Discharging a firearm in a school zone (§626.9, subd. (d); count 7).
- Possession of a firearm in a school zone (§ 626.9, subd. (b); count 8).
- Possession of a firearm by a felon (§ 29800, subd. (a)(1); count 9).
- Negligent discharge of a firearm (§246.3, subd (a); count 10).
- Possessing a concealed stolen firearm (§ 25400, subds. (a)(2), (c)(2); count 11).

Various enhancements were also alleged. Firearm enhancements were alleged as to counts 1 through 6. (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c).) All counts were alleged to be committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) Finally, the information alleged Mena had one prior strike conviction (§ 667, subds. (d), (e)(1); § 1170.12, subd. (b)), one serious felony prior (§ 667, subd. (a)(1)), and one prison prior (§ 667.5, subd. (b)).

The jury reached a verdict in December 2019. As to counts 1 through 3, the jury found Mena not guilty of attempted murder but guilty of the lesser included offense of attempted voluntary manslaughter. He was found guilty on the remaining counts. The jury found true the firearm enhancement as to counts 1 through 6, and it found the gang enhancement true as to counts 8, 9, and 11.

In June 2020, the court found the prior strike and prior serious felony allegations true. But it dismissed the prior prison allegations on the prosecution's motion, and it exercised its discretion to strike Mena's prior strike. The court sentenced Mena to an aggregate term of 26 years and eight months in state prison. The sentence consisted of an upper term of nine years on count 4, with additional consecutive terms of two years each for counts 5 and 6. The court added four years for the firearm

3

enhancement on count 4 and two terms of 16 months for the firearm enhancements on counts 5 and 6. A year each was added for count 8 and the count 8 gang enhancement. The serious felony prior added another five years. The remaining counts were imposed concurrently and stayed under section 654.

Mena appealed and made two arguments in his opening brief. First, he argued there is insufficient evidence to support two of the three convictions for attempted voluntary manslaughter. Second, he asserted his conviction for possessing a firearm in a school zone (count 8) must be reversed because it is a lesser included offense of discharging a firearm in a school zone (count 7). After briefing was complete, however, Mena filed a motion for leave to file a supplemental brief, which we granted. In his supplemental brief, Mena challenged certain portions of his sentence under various amendments to the Penal Code that became effective on January 1, 2022. Based on these revisions, he argued the gang enhancement findings must be struck and the remainder of his sentence must be remanded for full resentencing. The Attorney General does not oppose most of Mena's contentions except for his assertion that two of his convictions for attempted voluntary manslaughter must be reversed.

As explained below, we affirm Mena's three convictions for attempted voluntary manslaughter. We reverse the gang enhancement findings and remand the issue for retrial. Finally, based on amendments to the Penal Code that became effective this year, we direct the trial court on remand to resentence Mena under current law.

II

DISCUSSION

A. *Attempted Voluntary Manslaughter Convictions*

Mena was convicted on three counts of attempted voluntary manslaughter. He maintains two of these convictions must be reversed because the record contains insufficient evidence showing he intended to kill more than one individual. We disagree.

4

To be convicted of attempted voluntary manslaughter, the defendant must act with an intent to kill. A conscious disregard for life is insufficient to sustain a conviction. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1546-1547.) "When a single act is charged as an attempt on the lives of two or more persons, the intent to kill element must be examined independently as to each alleged attempted [manslaughter] victim; an intent to kill cannot be 'transferred' from one attempted [manslaughter] victim to another under the transferred intent doctrine." (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) Consequently, to affirm all of the jury's attempted voluntary manslaughter convictions, there must be sufficient evidence that Mena intended to kill the three victims.

Under substantial evidence review, "we review the facts adduced at trial in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. [Citation.] The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions." (*People v. Misa* (2006) 140 Cal.App.4th 837, 842.) "In considering the sufficiency of the evidence, we cannot reweigh the evidence, as the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. [Citation.] Rather, we simply consider whether any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. [Citation.] Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict,' the conviction will not be reversed." (*Ibid.*)

It is undisputed that Mena is a member of BST. At trial, there was testimony that Boysen Park, where the shooting occurred, was in BST territory. At the time of the shooting, a rival criminal street gang, Kodiak Street, was attempting to claim Boysen Park as its territory. A gang expert testified that when claiming new territory,

5

rival gang members will "post up" in the area. "Post up" means for gang members to present themselves in public to claim an area, which can act as a form of intimidation. If a rival gang came onto BST's territory, that would be disrespectful to BST. A BST gang member would be expected to confront and expel rivals from the gang's territory, which could reasonably be expected to include assault or murder. Further, if a gang or gang member is disrespected, they are expected to retaliate. Shooting at rivals gains respect for the shooter and his gang. Respect is paramount in gang culture. The aforementioned testimony provides relevant background for the eyewitness accounts at trial.

We begin with Mena's account of the shooting, which partially forms the basis of his appeal. At trial, Mena described walking through Boysen Park on the afternoon of the shooting. He was carrying a .40-caliber firearm and was heading to an area adjacent to the park where BST gang members frequently hung out. As Mena was walking by the primary baseball field at Boysen Park, he noticed a group of men sitting on a bench together. He recognized two of them as rival gang members. One of them was Hander R., a Kodiak Street gang member who had thrown a bottle at Mena from a car window while in BST territory a few weeks prior to the shooting. Mena believed the other members in the group were gang members based on their style of dress and their association with the two gang members he recognized. Mena recalled seeing five men, but other witnesses only remembered seeing three.

Mena testified that when he looked over at the group, they were already looking directly at him. According to Mena, Hander R. then jumped up, separated himself from the group, reached into his waistband, pulled out a silver object, and got behind a tree. Mena believed Hander R. was holding a handgun and was going to shoot him, so he pulled out his gun and fired at Hander R. until his gun was empty. According to Mena, Hander R. was still behind the tree when Mena's gun ran out of ammunition. Mena then ran. It was later determined that Mena fired nine shots based on the cartridge

6

casings found at the scene.  At trial and on appeal, Mena contends he only fired at Hander R. and not at the other men in the group.

Police officers at Boysen Park heard gunshots coming from the direction of the primary baseball field around 2:40 PM.  While driving in the direction of the baseball field, they noticed Mena running at full sprint.  He noticed the police officers, appeared to be startled, and continued running.  The police followed Mena and eventually apprehended him outside the park.  While conducting a pat-down search, the police found a .40-caliber handgun on him.  The slide on the gun was locked back, meaning it was out of ammunition.

There was a high school baseball game occurring at the primary field at the time of the shooting.  Thus, several players, coaches, and spectators from the game witnessed the shooting and testified at trial.  Their accounts appear to contradict Mena's testimony.  For example, Diego D., a spectator, was sitting in the bleachers when he noticed three males sitting on a bench dressed in "gang related" attire.  Mena began yelling and cursing at them.[2]  The three men did not say anything in response, but two of them jumped up off the bench and acted aggressively toward Mena.  They took two or three steps towards him and put their hands up in a "what's up" or "come" gesture, a form of disrespect to BST.  Mena then pulled out his gun and started shooting at them.  Diego D. did not see any weapons on the three men.  After Mena fired the first shot, the three men ran together in the same direction with their backs to Mena.  Mena continued to fire at the men as they ran away.  Likewise, Maxim G., a baseball player, was on the third-base line.  He saw Mena point a gun at the people on the bench and fire shots in their direction.  He shot three times while standing before going to one knee and shooting

_____

[2]  During cross-examination, Diego D. was impeached by statements he made right after the shooting, in which he told police the shooter had not said anything.  But he maintained at trial that the shooter had yelled at the group of men.  The jury reasonably could have found Mena's account at trial to be more credible, and we accept this credibility determination.  (*People v. Misa*, *supra*, 140 Cal.App.4th at p. 842.)

7

additional rounds. Other than Mena, Maxim G. did not see any other person with a weapon in their hands.

Adrian S., a baseball player, was in the first-base dugout. He heard the shooting occur behind him. After the shooting, he told an officer he had heard Mena say, "I told you I'd catch you slippin,'" prior to opening fire. Zachary T., an assistant baseball coach, was also in the first-base dugout. He heard someone behind him say, "something along the lines of, 'I knew I'd catch you guys sleeping or slipping.'" Zachary T. turned around and saw Mena, who was about 10 to 15 feet away from him, "pull out a gun and start firing towards the bleachers." He could not see at whom Mena was shooting. Jacob J. saw Mena firing towards the bleachers and then saw three males running away from that area.

While Mena argues there is no direct evidence showing his intent, that is common in homicide cases. "[I]ntent to kill often must be inferred from circumstantial evidence surrounding the crime." (*People v. Canizales*, *supra*, 7 Cal.5th at pp. 606-607.) And on appeal, "'[a]n appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.'" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Based on the entire record, there is sufficient circumstantial evidence to allow a rational trier of fact to conclude Mena intended to kill three men.

There was evidence Boysen Park was in BST gang territory. It could be inferred from expert testimony that the rival gang members Mena encountered were disrespecting BST by "posting up" in their territory. Mena, as a BST member, would have been expected to confront them. Killing them would have earned respect for Mena and BST, and respect is vital to gangs. The expert's testimony provides context for interpreting the various eyewitness accounts. Diego D. testified that Mena acted belligerently toward the group of men, yelling and cursing at them. There were also multiple reports that Mena yelled something akin to "I knew I'd catch you guys sleeping

or slipping" before opening fire on the group. From this evidence, it can be inferred that Mena was confronting rival gang members on BST territory and shot at them with the intent to kill.[3]

Further, "[a] jury can reasonably conclude a defendant without a primary target who repeatedly shoots into a crowd with the intent to kill committed multiple counts of attempted [voluntary manslaughter]." (*People v. Medina* (2019) 33 Cal.App.5th 146, 156].) Here, there was testimony that Mena fired at the people on the bench, not at a single individual behind a tree as Mena claimed at trial, supporting an inference that Mena fired at the entire group with the intent to kill, not at a single person. Mena also continued to fire at the men as they ran away together, strengthening the inference that he fired at the group collectively, intending to kill all of them rather than an individual. Finally, Mena fired nine rounds at the group, emptying his gun. Given the number of rounds fired, there is a reasonable inference he was targeting the entire group.

Mena dismisses much of the above evidence by individually examining each piece and explaining why it alone is insufficient to support a finding of intent to kill three people. But "'[t]he focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on "'isolated bits of evidence.'"'" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) Even if each piece of evidence discussed above was insufficient on its own to support multiple convictions for attempted voluntary manslaughter, it is enough when considered collectively. Together, this evidence reasonably establishes that Mena fired his gun at all the rival gang members on the bench with an intent to kill.

---

[3] Mena focuses on the testimony of Adrian S., who heard Mena say, "I told *you* I caught you slippin,'" prior to opening fire. (Italics added.) He contends "you" is singular, not plural, indicating he only intended to fire at one person. But the pronoun "you" can be singular or plural. (Merriam-Webster's Dict. Online (2022) <https://www.merriam-webster.com/dictionary/you> [as of Apr. 23, 2022].) The jury could reasonably infer Mena was using the plural form of "you" given the context.

Moreover, Mena's argument that he only intended to kill one person primarily relies on his testimony that he only shot at Hander G., who, according to Mena, separated himself from the group, pulled out a weapon, and took cover behind a tree. But multiple witnesses testified that Mena pointed the gun at the people on the bench, not at a person behind a tree. There was also witness testimony that Mena continued firing at the men after they all fled, undercutting Mena's account that Hander G. remained behind the tree after Mena ran out of ammunition. The jury could reasonably believe these witnesses over Mena.

In response, Mena contends that even if the jury disbelieved his testimony, it still cannot be inferred from the record at whom he was aiming. He insists there is insufficient evidence showing he aimed his gun at more than one person. But this argument obscures the relevant question, which is whether Mena intended to kill three men. While aiming and intent to kill are related, they are not synonymous. Even if the jury could not infer from the evidence that Mena aimed his gun at multiple people, it could still infer that he intended to kill three people based on the evidence set forth above. For example, Mena could have intended to kill three people in the group and fired generally in their direction rather than aiming his gun at specific people within the group. "[A] person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind. An indiscriminate would-be killer is just as culpable as one who targets a specific person." (*People v. Stone* (2009) 46 Cal.4th 131, 140.)

Finally, Mena asserts that his initial challenge to the rival gang members is not what caused him to draw his gun. Rather, he insists he drew his gun in self-defense after being threatened by the group. He cites witness testimony that two of the men moved aggressively toward him. Based on his acquittal for attempted murder and various jury questions asked during deliberation, he concludes the jury found he acted in

10

imperfect self-defense.[4]  Based on this theory, he argues that, at most, the jury could have found he intended to kill two men in self-defense – the two aggressors.  We are unpersuaded.

Even if Mena correctly asserts that the jury found he acted in imperfect self-defense, it could have inferred that Mena intended to kill all three men, not just the two men that acted aggressively.  Mena believed every member of the group was a gang member based on their clothes and their association with the two gang members he recognized.  Mena also testified he was concerned members of the group could be armed with a gun and could harm him.  Accordingly, there is a reasonable inference that Mena perceived the man who stayed seated as a threat and shot to kill him as well.  Further, Mena continued firing at the group of men after they ran away together and had their backs to him.  Even if Mena initially only intended to defend himself against the two aggressors, it could be reasonably inferred that Mena's intent shifted and that he shot to kill all the men after they ran.  After all, there was no need for him to defend himself from the two aggressors after the men all fled.

*B. Conviction for Possessing a Firearm in a School Zone*

Next, Mena argues his conviction for possessing a firearm in a school zone (count 8) must be reversed because it is necessarily included in his conviction for the greater offense of discharging a firearm in a school zone (count 7).  The Attorney General agrees, as do we.

"In California, a single act or course of conduct by a defendant can lead to convictions 'of *any number* of the offenses charged.'  [Citations.]  But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses."  (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)  "Our state high court has

---

[4]  The jury was instructed on both imperfect self-defense and heat of passion theories of attempted voluntary manslaughter.

long held that multiple convictions may not be based on necessarily included offenses." (*People v. Murphy* (2007) 154 Cal.App.4th 979, 983.) "[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) "Under the 'elements' test, we look strictly to the statutory elements, not to the specific facts of a given case. [Citation.] We inquire whether all the statutory elements of the lesser offense are included within those of the greater offense. In other words, if a crime cannot be committed without also committing a lesser offense, the latter is a necessarily included offense."[5] (*People v. Ramirez* (2009) 45 Cal.4th 980, 984-985.)

The crime of possessing a firearm in a school zone is set forth in section 626.9, subdivision (b), which states that "[a]ny person who possesses a firearm in a place that the person knows, or reasonably should know, is a school zone . . . shall be punished as specified in subdivision (f)." As such, the elements for this crime are (1) possession of a firearm, (2) in a school zone, (3) that the offender knows or should know is a school zone. Generally, a violation of this subdivision is punishable by two, three, or five years of imprisonment. (§ 626.9, subds. (f)(1), (f)(2)(A).)

Discharging a firearm in a school zone is a violation of section 626.9, subdivision (d), which makes it "unlawful for any person, with reckless disregard for the safety of another, to discharge, or attempt to discharge, a firearm in a school zone." The elements of this offense are (1) discharging or attempting to discharge a firearm, (2) in a school zone, (3) in reckless disregard to the safety of another. The punishment for a violation of subdivision (d) is three, five, or seven years of imprisonment. (§ 626.9, subd. (f)(3).)

---

[5] An offense can also be determined to be a necessarily included offense under "the accusatory pleading test." Under this test, "a lesser offense is included within the greater charged offense "'if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.'"" (*People v. Lopez*, *supra*, 19 Cal.4th at pp. 288-289.)

Here, the elements for the offense of discharging a firearm in a school zone include all the elements of the offense of possessing a firearm in a school zone. One cannot discharge a firearm in reckless disregard to the safety of another without possessing it. Consequently, the jury was instructed here that to find Mena guilty of discharging a firearm in a school zone, it must find that he "possessed a firearm." Though the offense of possessing a firearm explicitly includes a knowledge requirement as to the school zone while the offense for discharging a firearm does not, a knowledge requirement is implied for the latter. Criminal statutes are generally construed "to include a guilty knowledge requirement even though the statutes [does] not expressly articulate such a requirement." (See *Stark v. Superior Court* (2011) 52 Cal.4th 368, 393.) Likewise, the jury instructions in this case for the discharging a firearm count required the jury to find that "[t]he defendant knew or reasonably should have known he was within 1000 feet of the school."

Since all the elements necessary to find Mena guilty of the offense of discharging a firearm in a school zone also include the elements necessary to convict him for possessing a firearm in a school zone, the latter is a necessarily included offense. Therefore, we reverse Mena's conviction for possessing a firearm within a school zone.

*C. Gang Enhancements*

The jury found true the prosecution's gang allegations under section 186.22, subdivision (b)(1) as to counts 8, 9, and 11, which all pertained to illegal firearm possession (the firearm possession counts).[6] After Mena was convicted, this statute was amended by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (AB 333). Generally, the amendments made by AB 333 "impose new substantive and procedural requirements for gang allegations." (*People v. Sek* (2022) 74 Cal.App.5th 657, 665(*Sek*).) Mena asserts

---

[6] As discussed, we reverse the conviction on count 8 (possessing a firearm in a school zone), as it is necessarily included in count 7 (discharging a firearm in a school zone).

that under AB 333, which became effective on January 1, 2022, his gang enhancements on the firearm possession counts must be vacated and retried. The Attorney General concurs, and so do we.

Though Mena was convicted and sentenced prior to the effective date of AB 333, the Attorney General concedes the bill applies retroactively to nonfinal judgments, such as Mena's. To our knowledge, all published opinions that have considered the issue have reached the same conclusion. (See, e.g., *People v. E.H.* (2022) 75 Cal.App.5th 467, 478; *People v. Delgado* (2022) 74 Cal.App.5th 1067, 1087 (*Delgado*); *People v. Lopez* (2021) 73 Cal.App.5th 327, 344; *People v. Sek*, *supra*, 74 Cal.App.5th at p. 667.) As explained by one appellate court, our "Supreme Court [has] held that statutory amendments that reduce the punishment for an offense apply retroactively to a defendant whose judgment is not yet final absent a contrary legislative intent. [Citations.] Although the amendments [under AB 333] effective in 2022 do not alter the punishment imposed for a gang enhancement, . . . retroactivity applies because the amendments increase the threshold for imposition of the enhancement." (*Delgado*, at p. 1087, fn. omitted.) We agree with these cases.

Under the current section 186.22, subdivision (b)(1), the gang benefit enhancement applies to "a person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) While the text of this subdivision is roughly the same as the former version (compare with former § 186.22, Stats. 2017, ch. 561, § 178, eff. Jan. 1, 2018), AB 333 changed how it is construed. As such, there are at least two errors that warrant reversal.

The first error relates to a change in the meaning of "criminal street gang." As defined by statute, it "means an ongoing, organized association or group of three or more persons, whether formal or informal, [1] having as one of its primary activities the

14

commission of one or more [enumerated] criminal acts [(the primary activity element)] . . . , [2] having a common name or common identifying sign or symbol, and [3] whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).)  Prior to AB 333, vandalism was an enumerated criminal act that satisfied the primary activity element.  (*People v. Delgado*, *supra*, 74 Cal.App.5th at p. 1086 fn. 16.)  Accordingly, the prosecution's gang expert testified that BST's primary activities were "possession of a firearm and felony vandalism."  Similarly, the gang enhancement jury instruction stated the primary activity element could be met if the prosecution showed BST "has, as one or more of its primary activities, the commission of Felony Vandalism [citation] and Gun Possession [citation]."  However, AB 333 "amended . . . the predicate offenses that can be used to establish a pattern of criminal gang activity, removing vandalism . . . ."  (*Delgado*, at p. 1086, fn. 16.)  Since BST cannot be deemed a criminal street gang based on acts of vandalism under section 186.22 as amended, the jury instruction is incorrect.

Second, prior to the effective date of AB 333, "a defendant who had committed an offense to benefit the reputation of a criminal street gang, but with no other benefit, was subject to the [gang] enhancement."  (*Sek*, *supra*, 74 Cal.App.5th at p. 667.)  But following AB 333's effective date, the prosecution must now "prove the benefit the gang derives from the predicate and current offenses is 'more than reputational.'"  (*People v. E.H.*, *supra*, 75 Cal.App.5th at p. 478.)  "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g).)

It is undisputed the prosecution's gang expert provided significant testimony on the reputational benefits of the predicate crimes and the crimes at issue.  For example, the expert testified that possession of a deadly weapon generally increases a member's reputation in the gang.  He also testified committing violent crimes like

15

attempted murder increase the gang's reputation. But following the effective date of AB 333, the current and predicate offenses must be committed for some benefit other than reputation. Therefore, this testimony is now irrelevant to establishing a gang enhancement.

The Attorney General concedes the gang enhancement should be vacated and the matter retried. We agree. We are not certain beyond a reasonable doubt that the jury would have reached the same findings in the absence of the above errors. (*Sek*, *supra*, 74 Cal.App.5th at pp. 668-669 [applying reasonable doubt standard under *Chapman v. California* (1967) 386 U.S. 18, where expert improperly testified as to reputational benefits to gang].) It is unclear whether the jury found BST to be a criminal street gang based on criminal acts relating to gun possession, felony vandalism, or both. Moreover, given the gang expert's testimony, the jury reasonably could have found the gang enhancement true based on the reputational benefits of the predicate crimes and the crimes at issue. Consequently, we vacate the gang enhancement findings. The prosecution shall be permitted to retry the issue on remand.[7]

*D. Resentencing*

Mena also argues his case should be remanded for full resentencing based on amendments to sections 654 and 1170 that became effective this year. The Attorney General does not substantively oppose this request. Thus, on remand, we direct the trial court to resentence Mena under current law.

We start with Mena's arguments based on section 654. Generally, a defendant can only be punished once for a single act even if it violates more than one statute. (*Kellett v. Superior Court of Sacramento County* (1966) 63 Cal.2d 822, 824.) Former section 654, subdivision (a), provided that "[a]n act or omission that is punishable

---

[7] Given these findings, we do not address Mena's argument that the gang enhancement findings should also be vacated under *People v. Valencia* (2021) 11 Cal.5th 818.

16

in different ways by different provisions of law shall be punished under the provision that provides for the *longest* potential term of imprisonment." (Stats. 1997, ch. 410, § 1, eff. June 29, 1977, italics added.) As amended, this statute no longer requires the defendant to be punished under the provision with the longest potential prison term. Rather, it states "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under *either* of such provisions . . . ." (§ 654, subd. (a), italics added.)

Here, Mena was sentenced under former section 654. There is no dispute that counts 1 through 3 (attempted voluntary manslaughter) and counts 4 through 6 (assault with a semiautomatic firearm) involved the same act – Mena shooting at the three victims. The assault counts carry a longer potential prison sentence of up to nine years' imprisonment. (§ 245, subd. (b).) The maximum prison term for attempted voluntary manslaughter is five and a half years. (§§ 193, subd. (a), 664, subd. (a).) Thus, the court imposed sentences under the assault counts and stayed the sentences for the attempted voluntary manslaughter counts under former section 654. Likewise, for the firearm possession counts, the court imposed a consecutive prison sentence for count 8, which carries a maximum potential sentence of five years (§ 626.9, subd. (f)(1)), and stayed the sentences for counts 9 and 11, which each have maximum potential sentences of three years (§§ 18, 25400, subd. (c)(2), 29800, subd. (a)(1)). Following the amendments to section 654, however, the court may now impose sentences for the counts with lower potential prison terms.

As to section 1170, the prior version of this statute gave the court considerable discretion when selecting between lower, middle, and upper terms in determinate sentences. "In determining the appropriate term, the court [could] consider the record in the case, the probation officer's report, other reports . . . and statements in aggravation or mitigation . . . , and any further evidence introduced at the sentencing hearing. The court [was only required to] select the term which, in the court's discretion,

17

best serve[d] the interests of justice." (Former Pen. Code, § 1170, Stats. 2020, ch. 29, § 14, eff. Aug. 6, 2020.) But that discretion was significantly curtailed by amendments to section 1170 that became effective this year.

Section 1170 now contains "a presumption in favor of [the lower] prison term when a defendant is under 26 years of age at the time of the offense." (*People v. Flores*, (2022) 73 Cal.App.5th 1032, 1038-1039(*Flores*).) For such youth offenders, section 1170 now requires a trial court to impose the lower term unless it "finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6)(B).)

Mena was 22 years old when he committed the underlying offenses. The court imposed an upper term of nine years on count 4 (assault) because the crime involved great violence and threat of great bodily harm, Mena's violent conduct indicated he was a serious danger to society, Mena had served a prior prison term, and his prior performance on probation or parole. The court's selection of the upper term does not comply with current law. Among other things, it made no findings weighing the aggravating circumstances against Mena's youth offender status.

Other appellate courts have found the amendments to sections 654 and 1170 apply to nonfinal judgments. (*Flores*, *supra*, 73 Cal.App.5th at p. 1039 [section 1170]; *People v. Mani* (2022) 74 Cal.App.5th 343, 379 [section 654].) We agree. It is presumed "that newly enacted legislation mitigating criminal punishment reflects a determination that the 'former penalty was too severe' and that the ameliorative changes are intended to 'apply to every case to which it constitutionally could apply,' which would include those 'acts committed before its passage[,] provided the judgment convicting the defendant of the act is not final.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 881.) Thus, absent evidence to the contrary, we assume the Legislature intended statutory amendments mitigating criminal punishment to apply to all nonfinal judgments. (*Flores*, at p. 1039.) The amendments to the statutes at issue mitigate criminal

18

punishment, and we are unaware of any evidence showing the Legislature intended to limit their retroactivity. Since the amendments to sections 654 and 1170 could have a material effect on Mena's sentence, we direct the trial court on remand to resentence Mena under current law. (See, e.g., *Flores*, at p. 1040; *Mani*, at p. 381.)

Finally, although the Attorney General does not oppose Mena's request for resentencing, he believes it is unnecessary for us to consider Mena's arguments. Rather, assuming the gang enhancement will be reversed, the Attorney General contends the full resentencing rule already allows the trial court to conduct a full resentence on remand. Under this rule, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893.) As we read this authority, the full resentencing rule gives courts *discretion* to conduct a full resentence on remand when a portion of the defendant's sentence has been stricken. In this case, however, it is insufficient to simply allow the court discretion to revisit Mena's sentence. Given the material revisions to sections 654 and 1170 described above, the court must reexamine Mena's entire sentence on remand.

III

DISPOSITION

Mena's judgment is affirmed as to the three convictions for attempted voluntary manslaughter. We reverse Mena's conviction for possessing a firearm in a school zone. The jury's gang enhancement findings are also reversed, and the prosecution may retry the issue on remand. The trial court is also directed to conduct a

full resentencing of Mena on remand as set forth in this opinion. The remainder of the judgment is affirmed.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.