Filed 6/1/26  P. v. Wallace CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B323836 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA099532) |
| v. | |
| REGINALD LEANDER WALLACE, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Los Angeles County, Tony Cho, Judge.  Reversed in part and affirmed in part.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

At approximately 11:50 p.m. on January 4, 2019, a fistfight broke out at Gable House Bowl, a bowling alley in Torrance. At least half a dozen people joined in the fight. Appellant Reginald Wallace—then a 47-year-old associate of the Blood Stone Villains criminal street gang—did not participate in the fight. Instead, he observed the fight from a distance for a brief period while sipping brandy from a styrofoam cup. He then walked toward the group engaged in the fight, covered the lower part of his face, and fired 11 gunshots into the crowd before exiting the bowling alley and continuing to sip his drink. Wallace's gunshots killed three people and injured another four.

Security cameras, as well as a bystander's cell phone, captured footage of the incident. Wallace was readily identifiable as the shooter in the footage, and officers arrested him within two days of the shooting. While in custody, Wallace told an undercover "*Perkins*" operative[1] that he believed the individuals involved in the fistfight were members of the rival Four Eight Gangster Crips criminal street gang. Wallace also told the operative that he had failed in his attempt to avoid having his face captured on camera during the incident.

The district attorney charged Wallace with three counts of murder (counts 1 through 3), four counts of attempted murder (counts 4 through 7), and one count of possession of a firearm by a felon (count 8). At trial, however, the prosecution conceded the evidence did not support the attempted murder charge as to victim Ryan Shaw (count 4), and it requested that the jury convict Wallace

---

[1] "A '*Perkins* operation' is when an undercover operative is placed in a cell with the suspect to obtain information from the suspect. The term derives its name from *Illinois v. Perkins* (1990) 496 U.S. 292." (*People v. Zapata* (2026) 118 Cal.App.5th 529, 533, fn. 1.)

of the lesser offense of assaulting Shaw with a deadly weapon. Notwithstanding the prosecution's concession concerning count 4, the jury convicted Wallace on all counts as originally charged. In addition, the jury found true the special circumstance allegations charged on counts 1 through 3 and the firearm use enhancements charged on counts 1 through 7. The trial court imposed an aggregate sentence of life in prison without the possibility of parole (LWOP), plus 280 years.

On appeal, Wallace raises two challenges to his convictions and four challenges to his sentence, arguing that (1) insufficient evidence supports the attempted murder conviction on count 4, (2) the prosecutor committed misconduct in closing argument by suggesting that Wallace bore the burden of presenting certain portions of the *Perkins* operation recording, (3) the court improperly imposed additional sentences of 25 years to life on each of counts 1 through 3, (4) the court abused its discretion in declining to strike the firearm enhancements, (5) the court violated Penal Code[2] section 1170, subdivision (b) by relying on unproven aggravating factors in determining Wallace's sentence, (6) the court abused its discretion by declining to strike Wallace's prior strike convictions, and (7) the abstract of judgment contains a clerical error.

The Attorney General concedes, and we agree, that insufficient evidence supports the count 4 conviction. We likewise agree with Wallace that the court erred by imposing the additional 25-year-to-life terms on counts 1 through 3, that section 1170, subdivision (b) requires remand and resentencing on count 8, and that the court must correct the error in the abstract of judgment.

---

[2] Further unspecified statutory references are to the Penal Code.

We, however, reject Wallace's remaining claims as unsupported by the record and pertinent legal authority.[3]

Accordingly, we reverse in part and affirm in part.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

We summarize only the facts and procedural history relevant to our resolution of this appeal.

### A. Trial Proceedings

In April 2022, the district attorney charged Wallace with the murders (§ 187, subd. (a)) of Michael Radford (count 1), Astin Edwards (count 2), and Robert Meekins (count 3), the attempted murders (§§ 187, subd. (a), 664) of Ryan Shaw (count 4), Duane Smith (count 5), Justin Brown (count 6), and Dwayne Jones (count 7), and possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 8). In addition, the district attorney charged special circumstance allegations under section 190.2 on counts 1 through 3. Finally, the district attorney charged firearm use enhancements under subdivisions (b), (c), and (d) of section 12022.53 on each of counts 1 through 7.

In June 2022, the case proceeded to a jury trial. The prosecution theorized that Wallace fired into the group of individuals fighting at the bowling alley because he identified those individuals as members of the rival Four Eight Gangster Crips gang. In support of its theory, the prosecution introduced

---

[3] The Attorney General contends that Wallace forfeited many of his claims on appeal by failing to raise those claims before the trial court. Wallace asks that we exercise our discretion to consider his claims on the merits. Alternatively, he contends his trial counsel rendered ineffective assistance by forfeiting certain of his claims. Because we elect to consider Wallace's claims on the merits, we do not address his ineffective assistance arguments.

several categories of evidence, including: (1) footage from the bowling alley's surveillance cameras and a bystander's cell phone recording that captured the shooting from various angles, (2) a photograph of a styrofoam cup retrieved from outside the bowling alley, (3) forensic analysis supporting that the DNA on the styrofoam cup matched Wallace's DNA, (4) testimony from a gang expert that "Blood gang members [are] enemies to Crip gang members," and (5) excerpts of the recorded *Perkins* operation. The *Perkins* recording captures Wallace telling the undercover operative, in pertinent part:

"[I]t's over, dog. They got everything. [¶] . . . [¶] [W]e went way out there and it's . . . [¶] . . . [¶] . . . [t]he Four-Eights. [¶] . . . [¶] . . . They was in Torrance. They just—at a bowling alley. [¶] . . . [¶] . . . But . . . I fucked up, dog, 'cause—that's, like, I know it's a camera right here, so I'm—I walk this way. . . . [¶] . . . [¶] . . . Then it's another camera. I seen all this when I first—when I was getting . . . ice. I seen where most of the cameras at. So I'm, like, I ain't gonna face this way. I turned around and took off my jacket, then I walked this way. And I got directly under the—this camera 'cause I seen it ain't pointing down. It's pointing—[¶] . . . [¶] . . . at an angle. [¶] . . . [¶] . . . But I ain't knowing way over here is cameras—[¶] . . . [¶] . . . —right that way. [¶] . . . [¶] . . . I'm on film. [¶] . . . [¶] . . . They could—[¶] . . . [¶] . . . —can see me clearly. . . . [¶] . . . [¶] . . . So I—I know it's a camera this way, so I was facing this way. [¶] . . . [¶] . . . I ain't knowing it's four or five other cameras facing this way. [¶] . . . [¶] . . . And then they started fighting. [¶] . . . [¶] . . . So I knew all the Four-Eights and all them was all over there . . . . [¶] . . . [¶] . . . Yeah, all them motherfuckers is, like, in the[ir] 20s, early 30s."

In response, defense counsel argued that Wallace had acted in self-defense. Wallace testified on his own behalf as the sole defense

witness, telling the jury he was "drunk as hell," "high," and on psychotropic medication the night of the shooting. He explained that he fired into the crowd because he saw one of the murder victims, Edwards, pull out a gun. And he testified that he covered his face before shooting because "[t]he security [in the bowling alley] was macing everybody" in an effort to contain the fistfight.

On cross-examination, Wallace described himself as "still associating" with the Blood Stone Villains gang and acknowledged that he had suffered three prior convictions: (1) a juvenile conviction for the second-degree murder of a man who, according to Wallace, was attacking his mother, (2) a 1997 conviction for possession of a firearm within 100 yards of a public school, and (3) a 1998 conviction for assault with a firearm, for which he served approximately 20 years in prison. In addition, Wallace testified that he knew prior to the shooting that rival Four Eight Gangster Crip gang members were present in the bowling alley. Finally, Wallace testified that, although the recording of the *Perkins* operation "was edited," and the prosecution "only played certain parts," he never told the *Perkins* operative at any point during the two-day operation that he had seen Edwards draw a gun at the bowling alley.

In rebuttal, the prosecution recalled the lead detective on the case, who testified that he had reviewed "all of the video footage [of the shooting] that was assembled" and "never saw any firearm displayed [in the footage] by anyone other than [Wallace]."

During closing argument, the prosecution urged the jurors to reject Wallace's claim of self-defense and to convict him of the murder and attempted murder charges with respect to every victim other than Ryan Shaw. As to Shaw, the prosecution conceded it lacked sufficient evidence to support an attempted

6

murder charge, and therefore asked the jury to convict Wallace of assaulting Shaw with a deadly weapon:

"There's no evidence or indication that [Shaw] is a gang member. [¶] . . . In fact, he's got a cell phone up at the time of the shooting. . . . [¶] And because of that, he's not part of the melee. . . . [¶] When he was shot, did the defendant intend to kill . . . Shaw? The answer based on the evidence is no, because he was not a part of the melee.  He was separated.  And he was struck by gunfire when he was holding up the phone.  [¶]  So as to him, we're asking for the assault with a deadly weapon."  In light of the prosecutor's argument, as to Shaw, the court instructed the jury on the elements of the lesser offense of assault with a firearm.  The court further instructed that "assault with a firearm is a lesser crime of [the] attempted murder charged in count 4" (capitalization omitted), and that it could "accept a verdict of guilty of a lesser crime only if [the] jury] . . . found the defendant not guilty of the corresponding greater crime."

Also during closing argument, the prosecutor made the following comments concerning the portions of the *Perkins* operation recording played at trial:

"The other thing is that at some point defendant Wallace testified that, you know, this is not the entire recording or something to that [e]ffect.  Look, this is the highlight portion of [the] operation.  But I don't want you to think that we are somehow being underhanded with regard to the evidence. . . . [¶] We also know that during the discovery process that it's shared, that what we have the defense gets.  They can prepare.  If there was something to be played that was with regards to that, you would have heard it."

The jury convicted Wallace on all counts, including the attempted murder count involving Shaw—notwithstanding the

7

prosecution's concession that the evidence did not support such a conviction. The jury did not render a verdict on the lesser charge that Wallace assaulted Shaw with a firearm. In addition, the jury found true the firearm use enhancements. Finally, the jury found true the special circumstance allegations that Wallace previously had been convicted of first or second degree murder (§ 190.2, subd. (a)(2)) and that, in this case, Wallace had "been convicted of more than one murder, with at least one charge of first degree murder" (see § 190.2, subd. (a)(3)).

## B. Sentencing Proceedings

At the September 2022 sentencing hearing, defense counsel requested that the court "consider striking, in the interest of justice, the special circumstance allegations and sentencing [Wallace] to a non-[LWOP] sentence." In support of the request, defense counsel argued that—as reflected in settlement materials initially prepared for the prosecution[4] and later filed with the court—Wallace had grown up in "[e]xtreme poverty," surrounded by "instability" and "substance abuse that was going on around him in his immediate family." Defense counsel did not request any other specific relief with respect to Wallace's sentence.

The court declined to strike the special circumstance findings, explaining:

"So there are a number of aggravating factors that the court has considered in this case, along with the evidence that the court has heard. [¶] This crime did involve, as per California Rules of Court, [rule] 4.21, sub[division] (a), it's a crime that did involve great violence, great bodily harm or other acts that disclosed a

---

[4] Defense counsel submitted these "mitigation materials . . . to the district attorney's office in an attempt to settle the case for a non-LWOP sentence prior to trial." (Capitalization omitted.)

high degree of viciousness and callousness. And defendant was armed with and used a weapon at the time of the commission of the offense. [¶] And per sub[division] (b), if defendant has engaged in violent conduct that indicates a serious danger to society, the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency are numerous and of increasing seriousness, the defendant has served a prison term, the defendant was on parole at the time the offense was committed. The defendant's prior performance on parole had been unsatisfactory. [¶] And so with the aggravating factors, the court—as well as the defendant's criminal history, the number of victims in this case, the facts of this case, and, as I indicated, the defendant's criminal history, the court finds—believes that it would be an abuse of discretion to strike the special circumstances or the defendant's prior strike convictions."

The court then imposed an aggregate sentence of LWOP, plus 280 years to life. The sentence included consecutive LWOP terms on each of counts 1 through 3. The sentence also included additional, concurrent terms of 25 years to life under the "Three Strikes" law on each of counts 1 through 3. In addition, the sentence included consecutive 25 years-to-life firearm use enhancements imposed under section 12022.53, subdivision (d) on each of counts 1 through 7. The court, however, did not make any rulings staying or striking the firearm enhancements found true under subdivisions (b) and (c) of section 12022.53. Finally, the sentence included a concurrent, three-year upper term (doubled pursuant to the Three Strikes law) imposed on count 8. The court did not identify the aggravating circumstances on which it relied to impose the upper term sentence, nor did it otherwise explain its reasons for selecting the upper term.

Wallace timely appealed.

9

# DISCUSSION

## A. Insufficient Evidence Supports Wallace's Conviction for the Attempted Murder of Shaw

The parties agree, as do we, that insufficient evidence supports Wallace's conviction for the attempted murder of Shaw (count 4).

To prove that a defendant committed attempted murder, the prosecution must demonstrate beyond a reasonable doubt that the defendant acted with the intent to kill. (*People v. Hin* (2025) 17 Cal.5th 401, 456 (*Hin*).) " '[T]he intent to kill element must be examined independently as to each alleged attempted murder victim; an intent to kill cannot be "transferred" from one attempted murder victim to another under the transferred intent doctrine.' [Citation.]" (*Ibid.*)

Here, as the prosecutor conceded in closing argument, insufficient evidence supported that Wallace acted with the intent to kill Shaw: No evidence supported that Shaw was a member of a rival gang, and Shaw was not part of the fighting crowd at which Wallace directed his fire. Nor did any evidence support that Shaw was within a "kill zone" surrounding Wallace's intended targets. (See *Hin*, *supra*, 17 Cal.5th at p. 457; see *ibid.* [under the "kill zone" theory, " 'the nature and scope of the attack directed at a primary victim may raise an inference that the defendant " 'intended to ensure harm to the primary victim by harming everyone in that victim's vicinity' " ' "].) We therefore conclude we must reverse Wallace's attempted murder conviction on count 4, and that double jeopardy principles bar retrial of the charge. (*Id.* at p. 455 ["[a] finding of insufficient evidence is the functional equivalent of a judgment of acquittal, upon which retrial is prohibited"].)

Further, we agree with the parties that we cannot reduce Wallace's attempted murder conviction to one for the lesser

10

included offense of attempted voluntary manslaughter or the lesser related offense of assault with a firearm.  (Cf. *People v. Goolsby* (2016) 244 Cal.App.4th 1220, 1225 (*Goolsby*) ["when a trial or appellate court concludes that there is insufficient evidence to support a conviction of a greater offense, it can reduce the conviction to a lesser included offense that is supported by the evidence"].)  To prove the crime of attempted voluntary manslaughter, the prosecution must introduce evidence demonstrating that the defendant intended to kill (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1545–1547)—evidence absent from the record here.  And "[w]e are authorized to reduce a conviction only to a lesser included offense, not a lesser related offense." (*People v. Hamilton* (2018) 30 Cal.App.5th 673, 685; see *People v. Parks* (2004) 118 Cal.App.4th 1, 5–7 [assault with a firearm is not a lesser included offense of attempted murder].)

Finally, we agree with the parties that double jeopardy principles prohibit retrying Wallace on these lesser offenses.  (See *People v. Anderson* (2009) 47 Cal.4th 92, 103–104 [" '[t]he double jeopardy bar protects against a second prosecution for the same offense following an acquittal' " and "both federal and California law generally treat greater and lesser included offenses as the 'same offense' for purposes of double jeopardy"]; *Goolsby*, *supra*, 244 Cal.App.4th at pp. 1224–1226 [double jeopardy principles prohibit retrial on a lesser related offense where, as here, the court instructs on the lesser offense and the jury is discharged without rendering a verdict on the offense].)

Accordingly, we direct the trial court on remand to vacate Wallace's count 4 conviction for the attempted murder of Shaw.

11

### B. Wallace Fails To Demonstrate Prosecutorial Misconduct

Wallace contends the prosecutor committed misconduct by arguing in closing that the defense received a recording of the *Perkins* operation "during the discovery process," and that "[i]f there was something to be played" supporting Wallace's claim of self-defense, the jury "would have heard it." Wallace contends the argument improperly "conveyed that the defense had the burden to present more of the *Perkins* operation to prove that what was said there was unreliable." (Capitalization omitted & italics added.) We are not persuaded.

Our high court "ha[s] long held that a prosecutor may make ' "comments based upon the state of the evidence or upon the failure of the defense to introduce material evidence or to call anticipated witnesses." ' " (*People v. Steskal* (2021) 11 Cal.5th 332, 351; *id.* at p. 351 [prosecutor did not commit prejudicial misconduct by commenting on the defense's failure to call a witness].) And "[w]hile it is true that neither side is required to produce certain evidence, it is common for both sides to comment on the absence of potentially available evidence. Both parties will often, and legitimately, note that certain testimony is uncorroborated by any other witness, or that no fingerprint, photo, document, or forensic evidence supports the other side's theory." (*People v. Nadey* (2024) 16 Cal.5th 102, 157 (*Nadey*); *id.* at p. 156 [prosecutor did not commit prejudicial misconduct by commenting on the defense's failure to present DNA expert].)

Here, the prosecutor fairly commented on the absence of any statements from the *Perkins* operation supporting Wallace's self-defense theory. "The prosecutor did not argue that defendant had a duty to produce evidence, nor did he attempt to shift or lighten

12

the state's burden of proof." (*Nadey*, *supra*, 16 Cal.5th at p. 157.) We therefore reject Wallace's claim of prosecutorial misconduct.

### C. The Trial Court Erred by Imposing Additional Terms of 25 Years to Life on Counts 1 through 3

In addition to sentencing Wallace to LWOP on each of counts 1 through 3, the court imposed terms of 25 years to life under the Three Strikes law on each count. Wallace contends, and the Attorney General concedes, this was improper. We agree, as "[t]he finding of a special circumstance . . . eliminates the possibility of a 25-year-to-life sentence and leaves only the sentencing options of death or LWOP." (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 164; see § 190.2, subd. (a) ["[t]he penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the [enumerated] special circumstances has been found . . . to be true"].) We therefore direct the trial court on remand to strike the terms of 25 years to life imposed on each of counts 1 through 3.

### D. Wallace Fails To Demonstrate the Court Abused Its Discretion by Declining To Strike the Section 12022.53, Subdivision (d) Firearm Enhancements

Wallace contends the court abused its discretion under section 1385 by declining to strike the section 12022.53, subdivision (d) firearm use enhancements or, alternatively, impose lesser firearm enhancements. We disagree.

Section 1385, subdivision (c) provides, in pertinent part, that the presence of certain enumerated mitigating circumstances "weighs greatly in favor of dismissing [a sentencing] enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Wallace contends

that four such mitigating circumstances are present in his case,[5] and the court's failure to strike the firearm enhancements therefore demonstrates the court either was unaware of, or improperly exercised, its sentencing discretion.

But this argument ignores that even "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements" in furtherance of justice "provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)  Further, nothing in the record here affirmatively demonstrates that the court failed to conduct the proper analysis under section 1385, and we do not presume error from a silent record.  (See *People v. Coleman* (2024) 98 Cal.App.5th 709, 725 ["[d]efendant's citation to a silent record is insufficient to meet his burden to demonstrate an abuse of discretion"].)  We therefore conclude that Wallace fails to demonstrate the court abused its discretion in imposing the section 12022.53, subdivision (d) firearm enhancements.

We, however, agree with the parties that once the court elected to impose the greater section 12022.53, subdivision (d) enhancements on counts 1 through 7, it erred by failing to stay or strike the lesser section 12022.53, subdivisions (b) and (c) firearm enhancements.  (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1122–1123 ["after a trial court imposes punishment for the section 12022.53 firearm enhancement with the longest term of

---

[5] Wallace argues "the following [mitigating circumstances] existed:  multiple enhancements were alleged in the case, imposing the enhancements contributed to a total sentence of well over . . . 20 years . . . , the alleged prior murder occurred when he was 17 years old, and the current offenses could arguably be connected to mental illness, prior victimization or childhood trauma."

imprisonment, the remaining section 12022.53 firearm enhancements and any section 12022.5 firearm enhancements that were found true for the same crime must be imposed and then stayed"]; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 432 [failure to pronounce sentence for an enhancement represents an unauthorized sentence].)  We therefore direct the trial court on remand to stay or strike the lesser firearm enhancements found true by the jury.

### E. The Court's Failure To Comply with Section 1170, Subdivision (b)(5) Requires Remand and Resentencing on Count 8

Wallace contends the trial court violated section 1170, subdivision (b) and ran afoul of his constitutional due process and jury-trial rights by relying on unproven aggravating circumstances in (1) declining to strike the jury's special circumstance findings, (2) refusing to strike Wallace's prior strike convictions, and (3) imposing an upper term sentence on count 8.[6]  We reject Wallace's argument as to the special circumstance findings and prior strike convictions, but agree that remand and resentencing is appropriate with respect to count 8.

Section 1170, subdivision (b)(1) provides that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."  (§ 1170, subd. (b)(1).)  Paragraph (2), in turn, provides that "[t]he court may impose a sentence exceeding the middle term only when

---

[6] Wallace raises these arguments in separate sections of his opening brief.  Because they involve related issues of law, we address the arguments together.

15

there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).) Thus, section 1170, subdivision (b), "by its terms, governs sentences imposed pursuant to a statutory triad." (*People v. Mitchell* (May 18, 2026, S277314) ___ Cal.5th ___ [2026 Cal. Lexis 2620 *12-*13].)

Neither the pertinent special circumstances statute nor the Three Strikes law involves a statutory triad. Section 1170, subdivision (b) therefore does not apply to sentences imposed under these provisions. And Wallace fails to cite any authority supporting that a court violates a defendant's constitutional rights by considering unproven aggravating factors in making a discretionary determination about whether to *reduce* a defendant's otherwise statutorily prescribed sentence—such as by striking a special circumstance finding or a prior strike conviction. (Cf. *People v. Lynch* (2024) 16 Cal.5th 730, 766 ["in the context of discretionary sentencing schemes, the Supreme Court's precedent speaks of the right to a jury trial on 'any fact that exposes a defendant to a *greater* potential sentence'" (italics added & omitted)].) We therefore reject Wallace's challenge to these aspects of his sentence.

We, however, agree with Wallace that section 1170, subdivision (b) applies to the sentence imposed on count 8, which required the court to select among a low, middle, and upper term. We likewise agree that remand is appropriate because the court failed to comply with section 1170, subdivision (b)(5)'s requirement that it "set forth on the record the facts and reasons for choosing the sentence imposed" on count 8. (§ 1170, subd. (b)(5).) Without any

16

statement of reasons, we cannot properly review the propriety of the court's selection of the upper term. (See *People v. May* (1990) 221 Cal.App.3d 836, 838 [the absence of a statement of reasons for a sentencing decision may impede appellate review].)

Accordingly, we direct the trial court on remand to resentence Wallace on count 8, consistent with section 1170, subdivision (b). We express no opinion concerning how the court should exercise its sentencing discretion on remand, apart from requiring that it set forth "the facts and reasons for choosing the sentence imposed." (§ 1170, subd. (b)(5).)

## F. The Court Acted Within Its Discretion in Declining To Strike Wallace's Prior Strikes

Wallace contends the court abused its discretion by failing to strike his prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. (*See People v. Carmony* (2004) 33 Cal.4th 367, 371 (*Carmony*) [appellate court reviews denial of *Romero* motion "under the deferential abuse of discretion standard"].) We disagree.

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclude[s] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.] [¶] Consistent with the language of and the legislative intent behind the [T]hree [S]trikes law, we have established stringent standards that sentencing courts

17

must follow in order to find such an exception.  '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to . . . section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Carmony, supra,* 33 Cal.4th at pp. 377–378.)

The record does not support that Wallace falls outside the spirit of the Three Strikes scheme.  Wallace is a career offender who engaged in serious, violent crimes each time he was released from custody:  At the age of 17, he committed a homicide for which he remained in custody until he was 25 years old.  Within two years of his release, he committed an assault with a firearm for which he served approximately 20 years in prison.  Less than two years after his release following that assault, Wallace, then 47 years old, committed the triple homicide and three attempted murders in this case.  Wallace's contention that his criminal history is "not extensive" therefore is inconsistent with the record, and ignores that he has spent the majority of his adulthood in prison.

We acknowledge that the settlement materials prepared by defense counsel support that Wallace suffered significant trauma in his childhood, including experiencing extreme poverty and instability, witnessing gang violence, and being "surrounded by alcohol and drug abuse by all his caretakers."  We likewise acknowledge that Wallace earned various vocational and work certificates while in prison.  But considered along with his criminal

18

history and the nature of the present offense, we cannot conclude that the circumstances here are so extraordinary as to place Wallace outside the spirit of the Three Strikes law. (See *Carmony*, *supra*, 33 Cal.4th at p. 378 [" '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the [T]hree [S]trikes scheme must be even more extraordinary"].)

We therefore conclude the court acted within its discretion in declining to strike Wallace's prior strike convictions.

### G.    The Court Must Prepare an Amended Abstract of Judgment

Finally, we agree with the parties that the abstract of judgment contains a clerical error: Although the trial court orally awarded Wallace 1,364 days of actual custody credit, the last page of the written abstract of judgment reflects only 291 such credits. Accordingly, consistent with our high court's guidance in *People v. Buckhalter* (2001) 26 Cal.4th 20, 23, we direct the court on remand to recalculate Wallace's actual custody credits and to prepare an amended abstract of judgment that accurately reflects the court's award of such credits. (See *ibid.* ["[w]hen, as here, an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the actual time the defendant has already served and credit that time against the 'subsequent sentence' " (italics omitted)].)

19

# DISPOSITION

The count 4 conviction for attempted murder is reversed. The sentences of 25 years to life imposed pursuant to the Three Strikes law on each of counts 1 through 3 are stricken. The sentence on count 8 is vacated. On remand, the trial court shall (1) strike or stay the lesser firearm use enhancements found true by the jury on counts 1 through 7, (2) resentence Wallace on count 8 consistent with the requirements of section 1170, subdivision (b), and (3) recalculate Wallace's actual custody credits. The court then shall prepare an amended abstract of judgment consistent with this opinion and shall forward the amended abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.